Rives v. Flinn et al.

The defendant appeals, and assigns the charge as error.

STONE, CLOPTON & CLANTON, and JUDGE & HOLTZCLAW. for appellant.

WATTS & TROY, *contra.*

---

RIVES *vs.* FLINN ET AL.

47    481
135    520

[BILL IN EQUITY AGAINST SURETIES OF DECEASED ADMINISTRATOR TO TRANSFER FINAL SETTLEMENT OF ADMINISTRATION IN CHANCERY COURT.]

1. *Statute of limitations; when begins to run.*—The statute of limitations of six years in favor of the sureties of executors, administrators and guardians, (Rev. Code, § 2901,) begins to run from the date of the final settlement of the trust.

2. *General guardian, appearance by for minor; effect of.*—The general guardian of a minor may appear and represent him on the final settlement of the succession by the administrator, and such appearance cures the want of notice.

APPEAL from Chancery Court of Montgomery.
Heard before Hon. ADAM C. FELDER.

This was a bill in equity, filed by the appellant, as heir-at-law and distributee of the estate of Mary A. Rives, deceased, against the sureties of her administrator, and

against one Flinn, administrator of Bozeman, who had administered upon said Rives' estate, praying that Bozeman's administration be finally settled in the chancery court, and that on such settlement decree be rendered in favor of complainant for his proper distributive share of said estate.

It appears from the bill, which was filed October 6, 1870, that about the 10th of September, 1857, Bozeman was appointed by the probate court of Montgomery county, administrator of the estate of Mary A. Rives, who had died intestate in the State of Texas, leaving some estate in Montgomery county, but by far the larger portion in the State of Texas; that said estate owed no debts; that from time to time the estate in Texas was converted into money, and came into the hands of the administrator here, who duly qualified and administered upon said estate, and reduced the assets thereof into money in the year 1857. In 1859 Bozeman filed his accounts and vouchers for a final settlement. Due notice and publication was given of this settlement, and the court appointed one John M. Shields guardian *ad litem* for complainant, who was then a minor under eighteen years of age, but who became of age on the 19th of March, 1862. Shields never acted as such guardian, nor appeared in any manner at such final settlement, but one W. H. Rives, complainant's general guardian, appeared, and consented, for complainant, to the decree rendered in favor of complainant against said Bozeman on said final settlement, which was had on the 14th day of December, 1859. The proceedings in the probate court are made an exhibit to the bill. The decree of final settlement, omitting that part of it relating to publication, advertisement of day set for hearing, the names and residence of heirs, &c., is as follows :

"It appears that the following are the heirs-at-law and distributees, to-wit: Thomas E. Rives, husband of the deceased, who is of full age, and whose residence is unknown, and H. G. Rives, a son, who is a minor under the age of twenty-one years, and who resides in the city of Montgomery, State of Alabama, and of whom one William H.

Rives has qualified and given bond as guardian in this court; and the court proceeding to examine and state said account, and William H. Rives, guardian of W. H. G. Rives, a minor as aforesaid, coming into open court, and having examined said account, consents to its correctness as stated, and said account thus stated appearing to be correct: It is ordered, adjudged and decreed by the court, that said account be allowed; and it appearing to the court that the said Mary A. Rives died intestate in the State of Texas, being at the time of her death a resident citizen of said State of Texas; and it appearing to the court that the entire estate of the deceased now in the hands of said administrator, to distribute, is composed of cash.   *   *   *
*   *   *   *   *   *   *   *   *   *   *

"It is also ordered, adjudged and decreed by the court, that William H. G. Rives aforesaid recover from Jesse A. Bozeman, administrator as aforesaid, the said sum of four thousand two hundred and sixty-seven 89-100 dollars, to be credited with the sum of three hundred and 70-100 dollars, heretofore paid out and appropriated and expended by the said administrator for the use and benefit of said minor, which leaves still due the sum of three thousand nine hundred and seventy-seven 19-100 dollars, for which let execution issue."

The bill also alleges that Bozeman, before his final settlement, had received and converted to his own use $5,000 in goods, money and chattels belonging to said estate, and for which he did not account on his final settlement, and also, that Bozeman "commingled the assets of said estate with his own funds, and appropriated the same to his own use, and has wasted and misappropriated the assets of the estate, and converted the same to his own use, with a corrupt intent." Bozeman died in 1863, and Flinn was appointed his administrator. The bill alleges that the settlement on the 14th December, 1859, was void, and alleges error in said final settlement, and that the court allowed the father of complainant a larger distributive share than he was entitled to. There is no allegation that the general guardian did not collect the amount of the decree in favor

of complainant. Bozeman's administrator, the sureties on Bozeman's administration, and Thomas E. Rives, father of complainant, are made parties defendant.

The sureties demurred to the bill, among other grounds, because it showed on its face that it sought relief on a stale demand, against which the sureties were protected by the statute of limitations of six years. The chancellor sustained the demurrer and dismissed the bill. By agreement of counsel, the only question presented is, whether the sureties are liable on the facts stated in the bill. The error assigned is, that the court erred in sustaining the defense of the statute of limitations.

WALKER & MURPHEY, for appellant.—The entry on the 14th of December, 1859, recites that William H. Rives was the general guardian of the minor, and that he came into court and consented to the correctness of the account as filed, and thereupon the account was allowed.

The decree in that case is utterly void, for the following reasons : 1, there was no acceptance of his appointment by the guardian *ad litem ;* 2, it does not appear that the guardian *ad litem* was ever informed of his appointment; 3, no defense whatever was made for the infant, and no proof required, but one William H. Rives, represented to be general guardian, admitted the correctness of the account and vouchers.—See *Laird v. Reese,* 43 Ala. 148; *Frierson v. Travis,* 39 Ala. 150; *Searcy v. Holmes,* 43 Ala. 608; *Darrington v. Borland,* 3 Port. 23. An infant, upon the settlement of an estate of which he is a distributee, must be represented by a guardian *ad litem,* and can not be represented by one who is merely general guardian. Rev. Code, § 2138; Rules of Ch. Prac. 20, 23, pp. 825–6.

2. The decree of the probate court being utterly void, the administration of Bozeman on the estate of Mary A. Rives is unsettled, and the question arises here, whether the statute of limitations of six years in favor of the sureties of an administrator can run before the rendition of a decree on final settlement. We insist that it can not, and refer to an elaborate discussion of the subject in the case

of *Bunting v. Grigg*, now in the hands of the court for decision. It is insisted that the liability of a surety is not fixed until there is a decree against the principal.

3. The defense of the statute of limitations is available on demurrer where it affirmatively appears that the equity is barred by the lapse of the prescribed period. If it does not so affirmatively appear, the defense must be set up by way of plea.—Story Eq. § 751, p. 710. Now, it is impossible to affirm that the bill shows upon its face that the complainant's equity was barred when the suit was commenced, no matter what view be taken as to the time when the statute begins to run. If the date of the decree against the administrator be adopted as the time when the operation of the statute begins, then the bill shows that the equity is not barred, for it demonstrates that the only decree ever rendered is void. If the time at which the conversion or waste of the assets occurred be fixed upon as the commencement of the bar, then it does not appear from the bill that the bar was complete when the suit was commenced, for the bill does not show that the waste or conversion occurred at such a time as to make up the bar of the statute. It can be inferred from the bill that the waste or conversion occurred before the death of Bozeman, for the bill says that he wasted the assets, but even upon that argument the bar would not be complete, for Bozeman died during the war, and the statute would not begin until the 21st of September, 1865, which was less than six years before the commencement of the suit. For aught that appears in the bill, the waste or conversion may not have occurred until about the time of Bozeman's death.

The bill is not to be taken most strongly against the complainant on the question of the statute of limitations, because it is properly a pleadable defense, and it can only be made available on demurrer when the fact of the bar is plainly apparent from the bill itself.

By agreement, the court is to decide but one single question, and that is, whether the bill is demurrable by the sureties on the ground of the statute of limitations.

WATTS & TROY, and GRAVES & RHEA, *contra.*—1. Under ordinary circumstances, the statute of limitations commences running from the time when a right of action accrues. From whatever day the party plaintiff has a right to sue, the statute of limitations commences running.—See *Neal v. Cunningham,* 2 Porter, 171; Chitty on Bills, top page 608, and notes 1, 2, on that page; *Hopper v. Steele,* 18 Ala. 828; *Lucas v. Thorington,* 7 Ala. 605. But under the statute made for the benefit of sureties of sheriffs, administrators, &c., the statute would seem to run in favor of the surety, even before any right of action could be maintained against the sureties. The language is, that the time must be computed from the act done, or omitted, by the administrator, which fixes the liability of the sureties.

This is the interpretation given to the old statute with similar language, fixing the liability of the sureties of sheriffs.— *Governor v. Stoneum et al.,* 11 Ala. 679. The statute of limitations in favor of sureties may, under this particular language, commence to run even before a suit could be brought against the administrator.

3. Every bill in equity, on demurrer, must be construed most strongly against the complainant, and if it does not appear from the facts stated in the bill that the suit, under this construction, is brought within the time limited, there can be no recovery, and the bill must be dismissed on demurrer; and it is not necessary to plead the statute of limitations in courts of equity.—Story Eq. Pl. §§ 484, 485, 503; *Duckworth v. Duckworth,* 35 Ala. 70; *Humphries v. Terrell,* 1 Ala. 650; *Sims v. Caulfield,* 2 Ala. 555; *Byrd v. McDaniel,* 33 Ala. 18; *Nimmo v. Stewart,* 21 Ala. 682. If there be anything which will prevent the statute of limitations from running, the fact or facts having this effect must be stated in the bill.

A general demurrer will raise the question of the statute of limitations.—*Nimmo v. Stewart,* 21 Ala. 682.

2. To determine the question of the statute of limitations fully, it may be necessary to ascertain what effect is to be given to the decree of final settlement made on the 14th December, 1859. If this settlement was a valid set-

tlement, if it was not void, although it may abound in errors and irregularities, it can be made clear beyond dispute that the remedy against the sureties was barred by the statute of limitations before the commencement of this suit. Was, then, the settlement made by Bozeman on the 14th December, 1859, void?

The infant may be represented by his general guardian; and whenever this is shown to have been done, it dispenses with any necessity for appearance by a guardian *ad litem*. The general guardian is the proper representative of the ward, and he feels a higher degree of responsibility in protecting the rights of the ward than the guardian *ad litem* appointed by the court.—See *Smith v. Smith*, 21 Ala. 761, and especially on pages 764 and 765. In the case cited, it was held not even to be an irregularity—no error on appeal that the general guardian appeared for the ward, and not the guardian *ad litem*, and the appearance of the guardian was conclusive of the jurisdiction of the court to proceed with the settlement. The case of *King et al. v. Collins, Adm'r*, (21 Ala. 363), and especially on pages 369 and 370, recognizes the same doctrine.—See, also, *Morgan's Adm'r v. Morgan's Dist.*, 35 Ala. 307, 308, and especially the third point made in page 308. If a decree is made in favor of the guardian *ad litem*, he can not receive the money; it must be paid to the general guardian.—*Haynes v. Wheat*, 9 Ala. 243. This settlement was conclusive on all parties to it.—*Watt v. Watt*, 37 Ala. 543; *Modawell v. Holmes*, 40 Ala. 391; *Griffin v. Griffin*, 40 Ala. 296. The cases of *Laird v. Reese*, *Searcy v. Holmes*, and *Frierson v. Travis*, cited by the counsel for appellant, are not like this. In all of them the ward was unrepresented, either by a guardian *ad litem* or general guardian, and for this reason the court was without jurisdiction of the parties.

3. The record from the probate court of Montgomery county shows that Wm. H. Rives, the guardian of complainant, did appear and represent the complainant on that settlement.

There is no averment in the bill that Wm. H. Rives was not the regularly appointed guardian of complainant. The

record from the probate court states that W. H. Rives was the guardian. This record is made part of the bill of complaint, and it must be taken as true, unless its statements are charged to be untrue.—*Minter & Gayle v. Branch Bank*, 23 Ala. 762.

It was certainly the duty of the administrator, Bozeman, to pay the decrees on this final settlement, December 14th, 1859. His failure to do so was an omission of his duty, which fixed a liability; and from that day, if not before, the statute of limitations commenced running in favor of the sureties.

At any day after the rendition of that decree the sureties could have been sued for the failure of the administrator to pay the amount decreed to be paid, and, therefore, the statute commenced running in favor of the sureties. They could have paid the decree without waiting for execution.—See authorities before cited, and *Taylor and Wife v. Kilgore*, 33 Ala. 221; *Eiland v. Chandler*, 8 Ala. 783 ; *Snedicor v. Davis*, 17 Ala. 472 ; *Wheat v. Haynes*, 9 Ala. 239 ; *Dean v. Portis*, 11 Ala. 104.

4. But the bill shows a commingling of the assets of the estate with his own by Bozeman. It further alleges, that Bozeman, before the settlement of 14th December, 1859, converted the assets to his own use.

From the acts of misfeasance the sureties become liable, and from that day the statute of limitations commenced in favor of the sureties.—See *Governor v. Stoneum*, 11 Ala. *supra*, and the authorities there cited.

5. The complainant became of age on the 19th March, 1862, and he never filed this bill until the 6th day of October, 1870. Now, if we take out the time elapsing between the 11th day of January, 1861, and the 21st of September, 1865, under the ordinance of the convention of 1865, we have more than six years before the filing of this bill. From the 14th of December, 1859, to the 11th of January, 1861, is one year and twenty-eight days. From the 21st September, 1865, to 6th October, 1870, the time of filing the bill, is five years and fifteen days. Now, add the one year and twenty-eight days to the five years and fif-

teen days, and we have six years one month and thirteen days.

6. But as the bill is to be taken most strongly against the complainant, the statute of limitations commenced running in favor of these sureties from the time it is alleged that Bozeman commingled the assets of the estate with his own; from the time he wasted and converted the assets of the estate, and that was before he filed his account for final settlement of the estate. He filed this account on the 16th November, 1859.

The case of *Dean v. Portis* (11 Ala. 104), holds that an action may be brought against the sureties of an administrator on the bond whenever the administrator has wasted or converted the assets of the estate, although the *devastavit* has not been fixed in a separate suit. The judgment against him *de bonis intestatis* is sufficient evidence of a *devastavit.*—See, also, *Haynes v. Wheat*, 9 Ala. 239.

Debt suggesting a *devastavit* is maintainable after judgment against the administrator, even before or after issue of *fi. fa.*—*Burke v. Adkins*, 2 Porter, 236; *Thompson v. Searcy*, 6 Porter, 393; *Read v. Nash*, 23 Ala. 733.

In the case at bar, no act of the administrator amounting to waste, conversion, or other *devastavit*, is charged to have occurred after the decree on final settlement, the 14th December, 1859.

The bill charges that the estate was ready for final settlement before the administrator filed his accounts for final settlement. This readiness to settle, and the failure to do so, was an act of omission which fixed the liability on the administrator; and from that day the statute of limitations commenced to run in favor of the sureties.

Suppose the sureties had made application to the probate court to have the administrator removed, or for the purpose of requiring of him an additional bond, under section 2019 of the Code, and this application had been granted, and a new bond required and given; under the facts stated in this bill, would not the sureties have been liable for all acts occurring prior to the settlement of December 14th, 1859?

32

Section 2036 declares that when an additional bond is given on the application of the surety, such surety is discharged as to all breaches subsequent to the execution and approval of the additional bond.

Now, if the administrator had commingled the funds of the estate with his own; had converted them to his own use; had wasted them, and was ready for a settlement before he filed his account on the 16th of November, 1859, as alleged in the bill; and the sureties had filed their application to have additional bond; and on the 16th November, 1859, the court had required the additional bond, would the old set of sureties have been discharged from liability for these acts of waste and conversion? Would the new sureties have been liable for this past waste and conversion? Clearly not; but the old sureties would have been liable. If so, how can the conclusion be resisted that the statute of limitations commenced running from the time of the commission of the waste and conversion, which is alleged to have been done before the 16th November, 1859?

The fact that the sureties, by requiring the additional bond, could not have discharged their liability if an additional bond had been given, is conclusive to show that the administrator had done some act of malfeasance or misfeasance, or omitted some act or duty, which fixed his liability; and the time of the statute, under section 2901, must be computed from the act done or omitted by the administrator, which fixes the liability of the surety.

Section 2901, and the section 2036, must be construed together; the latter defines what is meant by "the act done or omitted" which fixes the liability of the surety; and the former provides that the time of the statute of limitations shall commence from the act done or omitted by the administrator, which fixes the liability of the surety.

B. F. SAFFOLD, J.—The bill is filed by the appellant, as the heir and distributee of the estate of Mary A. Rives, against the sureties of her administrator, Bozeman, for a final settlement of his administration in the chancery

court. By agreement of the counsel for both parties, the single question is presented for our consideration whether the sureties are protected against the account by the statute of limitations of six years in favor of the sureties of executors, administrators, guardians, &c.—Revised Code, § 2901, ¶ 6.

The bill charges that Bozeman was appointed administrator in 1857. He received property of the estate, and in December, 1859, made a pretended final settlement, a transcript of which is appended as an exhibit. From this transcript it appears that Bozeman filed his accounts and vouchers for a final settlement, and a day was appointed for the hearing. On that day the general guardian of the complainant, Wm. H. Rives, appeared to represent him. With his consent and concurrence, a decree was rendered against the administrator in favor of the complainant for a considerable sum of money. This decree was for his distributive share of the estate, there being only money to be divided, in accordance with section 2158, Revised Code, and upon it execution was ordered to issue.

The matters of complaint charged in the bill are all such as relate to a time anterior to the final settlement. The chief grievance is that the administrator wasted the property, and failed to account for all for which he was liable. The property being in money at the time of the settlement, could not afterwards be commingled, or wasted, in the sense usually attached to those words. The final settlement was an ascertainment of the extent of the administrator's liability, which fixed the liability of the sureties. They were then equally bound with himself to satisfy the decree.— *Yonge v. Ward*, 45 Ala. 474.

But the appellant says the final settlement was void, because the minor was not properly represented. Notice of the day fixed for the settlement is given by publication. Rev. Code, § 2140. When special notice to the infant is required, as in chancery, it is served on the general guardian.—Rule 20, Chan. Prac. The general guardian may appear for the minor, and such appearance dispenses with notice.—*Smith v. Smith*, 20 Ala. 761 ; *Morgan v. Morgan*,

35 Ala. 307.   There is no reason why the law should be otherwise, except in cases where the guardian is adversely interested.   The final settlement is not void.

The settlement was made on the 14th of December, 1859.   The bill was filed on the 6th of October, 1870. The statute declares that actions against the sureties of executors, administrators, or guardians, for any misfeasance or malfeasance whatever to their principal, shall be barred in six years, the time to be computed from the act done or omitted by their principal, which fixes the liability of the surety.—Rev. Code, § 2901, ¶ 6.   It does appear from the bill that six years had elapsed between the date of the final settlement and the filing of the bill, after deducting the time between the 11th of January, 1861, and the 21st of September, 1865.   The demurrer was properly sustained.

The decree is affirmed.