# Wright *v.* Lang.

*Bill in Equity by Executors, for Instructions in management of Estate, and Settlement.*

1. *Delivery of bond by surety, as escrow; waiver and estoppel.*—The surety on a bond, when sued, may, under a special plea of *non est factum*, show that he signed it, and left it with his principal as an escrow, to be delivered only on the express condition that other named persons should also sign it as sureties, and that it was delivered in violation of this condition; but, in such case, if the surety, knowing that the bond has been delivered, or being chargeable with notice of its delivery, suffers the principal to act under it without objection, this amounts to a waiver of the condition, and estops him from setting it up in avoidance of his liability.

2. *Presumption and burden of proof, as to delivery of bond.*—The possession of an executor's official bond by the probate judge to whom it is payable, and his approval of it, raise the presumption that it was properly delivered to him, and the *onus* of rebutting this presumption is cast on the party who denies the validity of the bond.

3. *Presumption as to payment and extinguishment of debt; liability of sureties of executor or administrator.*—As a general rule, the sureties of an executor or administrator are liable only for the assets which have come into the hands of their principal, or which he could have collected by the exercise of due diligence; but, when a debt is due from him individually to the testator or intestate, the law presumes its instantaneous payment and extinguishment, and his sureties are bound for it.

4. *Statute of limitations, as in favor of executor's sureties; begins to run, when.* The statute of limitations in favor of the sureties of an executor or administrator, on account of the *devastavit* of their principal (Code, § 3226, subd. 7), begins to run, not from the commission of the act of negligence or maladministration, but from the judicial ascertainment of the principal's liability for the act.

5. *Parties to bill for settlement of decedent's estate.*—When two joint executors file a bill in equity, asking the instructions of the court in the discharge of their duties, and one of them dies before the final settlement and distribution of the estate, the suit may be prosecuted by the survivor as sole complainant; but, if the executor so dying was also a residuary legatee under the will, it is error to proceed to a final settlement and distribution of the estate without bringing in his personal representative, unless the record affirmatively shows the facts which render administration on his estate unnecessary.

APPEAL from the Chancery Court of Pickens.

Heard before the Hon. A. W. DILLARD.

The bill in this case was filed on the 21st September, 1870, by John T. Lang and Robert Lang, as joint executors of the last will and testament of their deceased father, William

Lang, against the widow, children and grandchildren of said testator, who were legatees and devisees under his will ; and asked the instructions of the court in the discharge of their official duties in the management of the estate, alleged to be complicated by the changed condition of the estate on account of the emancipation of the slaves at the close of the late war. The will was executed in February, 1862, but the testator did not die until the 1st September, 1868 ; and the will was admitted to probate on the 23d December, and letters testamentary granted to John T. and Robert Lang on the 29th December, 1868.

At the July term, 1872, the death of Robert Lang, one of the complainants, was suggested ; and an order was made, without objection, so far as the record shows, "that the suit proceed without making his personal representative a party complainant." On the 1st October, 1874, John T. Lang, the surviving executor, filed his account and vouchers for a final settlement of the estate, showing a balance of $572.50 due to him from the estate. On the 21st November, 1874, " the heirs and distributees of the estate " filed their written objections to the account as stated by the executor ; insisting that he was chargeable with a "note for about two thousand dollars, made by himself to the testator in his life-time, and which went into his possession as assets of the estate, and has not been accounted for ;" and that there were "other notes of the adult distributees for many thousand dollars, executed by them to the testator in his life-time, and with which they were chargeable by way of advancement, and which went into the possession of the executor, and he has failed to account for the same, or to charge the same to said legatees on final account." On the same day, 21st November, 1874, an order was entered in the cause by the chancellor, "that the heirs at law and legatees of William Lang, deceased, be allowed to call witnesses to show that John T. Lang, executor, should be charged with notes, &c., that came to his hands."

. Under this order as an order of reference, the parties appeared before the register, and adduced evidence in regard to the notes with which they sought to charge the executor ; and the register made his report to the court, at the July term, 1875, as follows : " In the matter of the notes alleged to belong to the estate of William Lang, deceased, on John T. Lang and W. H. Lang, the heirs at law have produced witnesses before the register, whose evidence and answers in the matter the register herewith reports, with this his report. It is claimed by the affidavit on file of said John T. Lang, that said note due from him was given up to him and cancelled by his father, the said William Lang. The proof taken tends

to show that said notes were in the possession of said William Lang at his death; but they were not appraised and inventoried when the estate was originally appraised. The proof is conflicting, and the register submits it to the court for decretal order thereon." Among the testimony thus submitted by the register was that of J. S. Walker, who stated, in substance, that he held three notes against said John T. and Wm. H. Lang—namely, one note, for about $900, signed by J. T. Lang; one for about $500, signed by Wm. H. Lang; and one for between $350 and $400, signed by said J. T. and Wm. H. Lang jointly—that he transferred these notes, in the fall of 1865, for valuable consideration, to said William Lang, deceased; that said Lang "rather hesitated to take the notes, and remarked that the parties owed him now more than he expected to get;" and that, "in a conversation had with witness about twelve months before his death, he stated to witness that he still held said notes." Other witnesses testified, that the notes were among the testator's papers at the time of his death, and went into the possession of his executors. On the evidence submitted, the chancellor held and decreed, that the notes were the property of the estate; that the executor was guilty of a conversion in failing to include them in his inventory, and that the sureties on his bond "are bound to make good to the estate all moneys which the executor owed and omitted to include in his inventory;" and he ordered a reference to the register, to ascertain the amount due on the notes thus omitted.

At the November term, 1877, a petition was filed by "B. M. Lang et al., heirs at law of the estate of said William Lang, deceased," praying for "an order of reference to the register, that he may ascertain and report to the court the amount due to each of said petitioners; and that upon the coming in of said report, the court will make a decree declaring what the interest of each petitioner is in and to the amount due from said executor to said estate, which was ascertained by the register's report, made at the November term, 1875, to be $1,758.50, and will require the register to cast up the interest on said sum, from the time of the coming in of said report at said term; and that the court will make a decree, upon the ascertainment above prayed for, requiring said executor to pay to each of said petitioners the amount ascertained to be the distributive share of each." At the same term, a petition was filed by John R. Wright and M. L. Stansel, stating, on information, that their names appeared as sureties on the executor's official bond; denying that they were parties to the bond, "or bound by such bond, if such has been made and filed;" and praying, if their names ap-

peared on the bond, that the complainant be required to institute proper proceedings in the cause to test the question of their liability, or that they be allowed to intervene as parties. The chancellor overruled and refused the petition of said Wright and Stansel, on the ground that they were "privies to the bill filed by their principal," but gave them leave to appear before the register, "when he comes to state the account, and show that they are not the sureties on said executor's bond."

On the reference before the special register, the said Wright and Stansel, with Lewis T. Lang, whose name also was signed to the bond as a surety, appeared, and filed a special plea of *non est factum,* verified by affidavit, alleging that they signed the supposed bond, and delivered it to the said John T. Lang, " with the understanding and express condition, and upon the promise of the said John T. Lang, that he would procure other persons, viz., John T. Terry, E. D. Willett, and A. M. Wilkins, also to sign said bond as sureties, which he stated they had promised to do ; all these names to be procured to said bond, and then all to appear before the probate judge and acknowledge it, and said bond to become obligatory only on these conditions ;" and that the instrument so signed by them was delivered to the probate judge, if delivered at all, by the said John T. Lang, in violation of this condition and promise, and was never delivered or acknowledged by said sureties, or by any one authorized by them to deliver it. The bond was dated the 29th December, 1868, and was approved by the probate judge on the same day ; the names signed to it being J. T. Lang, Robert Lang, Lewis T. Lang, A. C. Lang, M. L. Stansel, and J. R. Wright. The probate judge, by whom the bond was approved, testified on the reference, that he was satisfied, before he approved it, that the bond was signed by all the parties ; but his recollection about it was not distinct, and he could not remember whether it was signed or acknowledged before him, or whether he was satisfied from his knowledge of the handwriting of the signers. *Lewis T. Lang* testified : " I signed it upon the condition that M. L. Stansel, E. D. Willett and J. T. Terry would all sign it. When I signed it, all that was said was, that Stansel, Terry and Willett were to sign it. I made that a condition to my signing it." *Wright* testified : " John T. Lang brought the bond to my house, six miles in the country from Carrollton, and asked me to sign it ; that Stansel and L. T. Lang had signed it, and J. T. Terry and E. D. Willett were to sign it ; and said Terry and Willett would sign it, if I would. I signed it with that understanding, and would not have signed it, if I had known

[Wright v. Lang.]

that Terry and Willett, or some other good solvent parties, had not signed, or were not to sign it. About the 1st January, 1869, John T. Lang came and told me that Terry and Willett would not sign his bond, and it went along that way. I took no steps to be released, until I filed a petition in October, 1871, asking to be released from the bond, because I was apprehensive of loss or damage. I had a conference with Col. M. L. Stansel, and he said, 'Let it go on.' This was after I had withdrawn the application to be released, but I had not told him that I had withdrawn it." *M. L. Stansel* testified, that he refused to sign the bond, when first requested by J. T. Lang, and afterwards signed it under circumstances which he thus stated : " On the day I signed it, he came back to my office, and renewed his request, and I again declined. He then told me that John R. Wright, Dr. A. M. Wilkins, I think, and John T. Terry and E. D. Willett would sign the bond, and that Terry and Willett would sign the bond if I would ; and stated that myself, Terry and Willett would have the management of his business as executor, and there would be no danger. I told him to take the bond to Terry and Willett, and get them to sign it, and I would sign it. He went out of the office with the bond, but came back in a little while, and said that Terry declined to sign it unless I signed it first. I remarked, that it made no difference who signed first, and took the bond, signed it, and handed it back to him, with the request that he get it signed by the others, and with the understanding that he get the others to sign it. I told him that, if Wright and Wilkins signed it away from here, he must have a magistrate's certificate, and the others who signed it here could acknowledge it before the probate judge. I did this with a view to know that it was properly signed. I declined to sign the bond, until I had the assurance that the others named would sign it. I did not state to him that I would not be bound if the others did not sign ; but I told him he must have the certificate to those who signed it at Pickensville made up right there, and the others (who were to sign it here) would go before the probate judge and acknowledge it ; and it was the understanding that he was to bring the bond back here. There was no express condition that the bond was not to be delivered to the probate judge : the condition was, that he was to bring the bond back here to be acknowledged. I never inquired of the probate judge, as to whether Terry and Willett or Dr. Wilkins had signed the bond. I never said a word to him about the bond, because, after I learned that the bond had been delivered without the other names, it was too late to complain. I never saw or heard of the bond for several years after J.

[Wright v. Lang.]

T. Lang took it off, and had no other business transactions with him for several years afterwards. The matter passed out of my mind, until the litigation about the notes of J. T. and W. H. Lang under the reference, when John R. Wright informed me of the proceeding to make the sureties liable, and informed me that Terry, Willett and Wilkins were not on the bond; which I then found to be true for the first time."

On the coming in of the special register's report, the said Wright, Stansel and Lewis T. Lang again interposed a plea of *non est factum*, and also pleaded the statute of limitations of six years. The chancellor overruled these pleas, holding that they were liable as sureties on the bond, and that their liability was not barred by the statute of limitations; and he rendered a decree against them for the amount of the executor's *devastavit* in failing to account for the said notes.

The appeal is sued out by "John R. Wright *et al.*," who here assign as error—1st, the overruling and refusal of the petition filed by the sureties; 2d, the overruling of their pleas; 3d, the final decree; 4th, the failure to bring in the personal representative of Robert Lang as a party to the suit.

E. J. FITZPATRICK, M. L STANSEL, and SNEDECOR & COCKRELL, for appellants.—1. The testimony shows that each of the appellants signed the bond upon condition that it was also to be signed by other persons, who never did sign it; and this testimony is uncontradicted. Without the signatures of the other persons named, it was not the bond of the appellants.—*Guild v. Thomas*, 54 Ala. 414; *Bibb v. Reid & Hoyt*, 3 Ala. 88. As to Stansel and Lewis T. Lang, no ratification of the unauthorized delivery can be inferred, because no notice or knowledge of it on their part is shown until the question of their liability arose in this case. Ratification is in the nature of election, and depends on knowledge of the facts.—*Reavis v. Garrett*, 34 Ala. 558; *Adams v. Adams*, 39 Ala. 274; *Key v. Jones*, 52 Ala. 244. As against Wright, his petition to be discharged shows that he knew the bond had been delivered, and that the executors were acting under it; but it is no evidence that he knew it had been delivered in violation of the condition on which he signed it, nor is there any other evidence of such knowledge on his part.

2. The executors' inventory was filed on the 29th December, 1868, and this proceeding, seeking to charge the sureties on account of the executors' failure to include certain notes in their inventory, was commenced on the 22d November, 1877, which was more than six years after the default com-

plained of.—Code, § 3226, subd. 7. " The liability of a surety on an administration bond, for a *devastavit* committed during his life-time by his principal, is strictly matter of contract, and is absolute, not contingent, accruing at the time of the commission of the *devastavit*, and not at the time of its subsequent ascertainment by judicial decree."—*McDowell v. Jones*, 58 Ala. 25 ; also, see *Snedicor v. Davis*, 17 Ala. 472.

3. The notes of Wm. H. Lang, not included in the inventory, should not have been charged against these sureties, since they were never collected, and there was no negligence in the failure to collect them, he being insolvent.—*Douthitt v. Douthitt*, 1 Ala. 594 ; 4 Ala. 359 ; *Dean v. Rathbone*, 15 Ala. 328 ; *Ivey v. Coleman*, 42 Ala. 409 ; *Wilkinson v. Hunter*, 37 Ala. 268 ; *Harris v. Parker*, 41 Ala. 604.

4. In proceeding to a final decree, without bringing in the personal representative of Robert Lang, the court below committed a manifest error, since the record does not affirmatively show that administration on his estate was unnecessary.

A. O. LANE, *contra*.—The sureties were privies to the bill filed by their principal, and could only raise the question of the *factum* of the bond, which they were allowed to raise. 54 Ala. 21 ; 4 Ala. 417 ; 5 Ala. 117 ; 8 Ala. 660. The evidence fails to show that the bond was delivered as an escrow. 17 Ala. 89 ; 29 Ala. 156 ; 2 Mass. 452 ; 7 Cush, 175 ; 4 Pick. 520 ; 3 U. S. Digest, 4, §§ 63, 64. If there was such conditional delivery, the breach of the condition was waived ; since the sureties, if they did not have actual knowledge that the executors were acting under the bond, had notice of facts sufficient to put them on inquiry, and are thus chargeable with constructive notice. That the statute of limitations had not completed a bar in favor of the sureties, see *Jones v. Ritter's Adm'r*, 56 Ala. 270.

SOMERVILLE, J.—In *Guild v. Thomas*, 54 Ala. 414, it was held to be a good defense to an action on an injunction bond, that the defendant, who was a surety, intrusted the bond to the principal obligor as an *escrow*, with authority to deliver it only on the express condition, that other persons named should first join as sureties in its execution. It was delivered contrary to this condition, and the surety was held not liable, on a plea of *non est factum* being filed by him setting up these facts. This principle, however, does not apply, where the sureties suffer the principal obligor to act under such bond, after acquiring knowledge, or being charged with notice, of the fact that it has been delivered.

The evidence in this case clearly proves the fact that the bond of Lang was delivered to him only as.an *escrow*. Appellants signed it, with the understanding that it was to be signed by other named sureties, before being delivered to the probate judge, and that after the other required signatures were obtained, it should be returned to Stansel, one of the sureties, for his inspection before delivery. It was filed December 29, 1869, in violation of these conditions, and without being so inspected by said surety. In October, 1871, nearly two years after this, Wright, one of the sureties, made application to the Probate Court, for the removal of Lang from his position as executor, in the event of his failure to give an additional bond, under the provisions of section 2380 of the Code of 1876. The ground of the application was, the alleged insolvency of Lang, and the apprehension of loss by his continuance in his executorial office. No mention was made in this petition, of the bond having been executed on any condition, or having been delivered without the authority of Wright or the other sureties. The fact that this application was filed was known to Stansel, but not until it had been withdrawn, and proceedings under it abandoned at the solicitation of Lang. He was cognizant of the fact, however, that the executor was acting as such, having aided in making out his inventory, and he knew that the bond had not been returned to him for his inspection. This was sufficient, we think, to put Stansel on inquiry as to its probable delivery. The other surety, Lewis T. Lang, admits, in his deposition, that he knew that John T. Lang had taken charge of the estate, and was proceeding to discharge the duties of his office.

We think these facts constitute a waiver of the conditions in question, and operate as an *estoppel* upon the sureties, in view of their subsequent silence until November 23, 1877, when they filed a petition asking to be made parties to this bill, for the purpose of raising this issue. They suffered the executor to act without objection. They had the means of ascertaining whether the bond was properly executed, and it was their fault if they failed to do so.—Brandt on Suretyship, § 363; *Robertson v. Coke*, 11 Ala. 466; *May v. Robertson*, 13 Ala. 86. In cases of this character, the possession of the bond by the probate judge, and his approval of it, raise the presumption that it was properly delivered to him as the obligee. The *onus* of rebutting this presumption rests on the party denying the validity of the instrument. We cannot see that the chancellor erred, under this state of facts, in holding that the sureties were bound.—*Firemen's Ins. Co. v. McMillan*, 29 Ala. 147; *Spence v. Rutledge*, 11 Ala. 590.

It is insisted that the chancellor erred in charging the executor, upon his final settlement, with the notes of William H. Lang. These notes were payable to the testator, and the executor refused to place them upon his inventory, though they were found among the papers of the said deceased; and his excuse for such refusal was, that they were paid, for and on his account, and were intended to be cancelled. This averment the evidence fails to sustain, but the notes are shown to be worthless by reason of the maker's insolvency.

It is a correct rule of law, that the sureties of an executor or administrator are generally liable only for such assets as may have come to the principal's possession, or which he could have collected by the exercise of due diligence. *Thompson v. Searcy,* 6 Port. 393; *Miller v. Gee,* 4 Ala. 359. But a different rule obtains, where the debt is due by the personal representative, in his individual capacity, to the estate or testator. Here, the right to demand, and the obligation to pay, both *co-exist in the same person,* and the law presumes instantaneous payment and extinguishment of the debt. The sureties are thus held conclusively liable, though by operation of a mere legal fiction.—*Seawell v. Buckley,* 54 Ala. 592.

The statute of limitations did not commence to run in favor of the sureties, as against this *devastavit* of the executor, until the judicial ascertainment of the principal's liability. This liability is fixed, within the meaning of the statute, not at the date of the actual act of negligence or maladministration, but when it is judicially declared to exist by the judgment of a court of competent jurisdiction.—*Fretwell v. McLemore,* 52 Ala. 124; *Rivers v. Flinn,* 47 Ala. 481; *Adams v. Jones,* at the present term; Code (1876), § 3226, subd. 7.

We find one error in the record, however, which necessarily works a reversal of the chancellor's decree. Upon the suggestion of Robert Lang's death, the settlement should not have progressed to completion, without allowing an opportunity for his personal representative to be made a party defendant. The surviving executor could well proceed with the suit, as the sole remaining party complainant; for executorships, in such cases, being coupled with an interest, survive.—2 Perry on Trusts, § 414. It is true that there are cases, where a court of equity will dispense with administration, and decree distribution direct. But this is only where it appears from the averments of the bill that the administration would be a useless ceremony, and the sole purpose to be accomplished by it is mere distribution. In such cases, it must be made to appear affirmatively that there are no

creditors to be prejudiced, or that a sufficient time has elapsed since the death of the debtor to presumptively bar all existing claims against his estate.—*Miller v. Eatman,* 11 Ala. 614; *Plunkett v. Kelly,* 22 Ala. 655; *Frowner v. Johnson,* 20 Ala. 477. We cannot know that the machinery of a court of equity has not been here instrumentally used to distribute property, which ought to have been charged with the debts of Robert Lang. He was a residuary legatee under his father's will. His representative had a right to be made a party to the proceeding, with the view of protecting this interest, however remote or contingent its realization. We cannot know that he would get nothing, for this was one of the very issues to be tried in the cause.

The decree of the chancellor is reversed, and the cause is hereby remanded.