HARRISON v. HARRISON, ET AL.

1. The effect of our statute authorizing the Orphans' Court to compel an administrator to distribute the estate after eighteen months, is not to limit the jurisdiction of the court to cases where no will is made. It merely ascertains the period when the estate shall be distributable.

2. After the expiration of eighteen months, all assets not specifically bequeathed, and which are usually the subject of sale, are distributable by the direction of the Orphans' Court.

3. Under the statutes of this State, the Orphans' Court is invested with power to determine the validity of bequests, and consequently to declare their invalidity; but this power does not extend to trusts created by will, nor to litigation between the *cestuis que trust* and the executor, as trustee.

4. It is no bar to power to distribute the effects of an estate, that the administrator has obtained, but not carried into effect, an order for the sale of the personal estate.

5. Nor does the circumstance, that the distributees, or some of them, file a bill to prevent the execution of such an order of sale, operate as a bar to the exercise of the power to distribute the estate under the statutes.

6. Chancery has jurisdicrion, either at the instance of the distributees, to compel a distribution and final settlement, or at the instance of the administrator, to declare the validity or invalidity of wills; but no such application being made by the administrator, and the decision of the Orphans' Court upon the same matter, being equally conclusive, it is unnecessary for the protection of the administrator to have the opinion of a Court of Chancery, on the validity of the will under which he acts.

7. In all suits for distribution or final settlement, the proceedings may be instituted by one or more parties, and the administrator as to him is the defendant. If the distribution or settlement involves the rights of others, they are not concluded by the decree, unless brought before the court; but this duty devolves on the administrator, as he is the party for whose protection it is necessary. Consequently, it is error to refuse to delay a suit for distribution, until the necessary citations can be given by the administrator to all parties having an interest in the distribution.

8. When a decree is made for the distribution of the personal estate by commissioners, the practice is, that the return and report by them is subject to exception, and it is only after its confirmation by the court, that the final order is made to deliver the property, and it is at that time, or subsequently, the refunding bond is examined and approved by the court.

Harrison v. Harrison, et al.

Error to the County Court of Dallas.

PETITION on behalf of a portion of the distributees of the estate of Richard B. Harrison, to compel the administrator with the will annexed to make distribution.

The petition sets out, that the decedent was, at the time of his death, a resident of Dallas county, and possessed of real and personal estates of great value. That a paper purporting to be his will, was admitted to probate in the Orphans' Court of said county, and letters of administration with the will annexed, granted to the defendant, Kirkland Harrison, soon after the death of the decedent, in 1843. That this will provided for the emancipation of certain slaves therein named, and devised certain property, real and personal, in trust, for their use and benefit, but contained no other bequests or devises whatever. It then proceeds to state, that the provisions of this will cannot be carried into effect, as contrary to the laws of the State, and wholly void. The petitioners assert, they are entitled to distribution of the estate of the said decedent, he having died without children, or descendants of children, as the brothers and sisters, or descendants of brothers and sisters of the decedent, in common with the administrator, and the unknown descendants of another sister of the decedent. The petition alledges that more than eighteen months have elapsed since the grant of administration, and that assets fully sufficient to pay all the debts of the estate have been received by the administrator. A citation having issued to the administrator to show cause why he should not make distribution, he filed an answer, in which he sets up the following matters in avoidance of the prayer of the petition, to wit :

1. That the same court, on the 3d of November, 1843, by its order, directed him, as administrator, to sell the property, now sought to be distributed, according to law, which said order is yet in full force, not reversed, vacated or set aside, nor can it be, except by the revision of some superior tribunal.

2. That when the administrator was about to proceed under said order, the petitioners filed their bill in the Court of Chancery, to restrain the said sale, and to have a division of

the said slaves; that thereupon an order was made by said Court of Chancery, to prevent the administrator from proceeding under the order of sale aforementioned, whereby the jurisdiction of the County Court in the premises, has been assumed by the Court of Chancery, which in due time will proceed to make distribution, &c.

3. If the petitioners are not precluded by the matters above stated, from a distribution and division, then that the estate is not ready for distribution, because the respondent could not be in readiness therefor from its magnitude and complication.

4. That a sale of the slaves, and not a division, is the most proper disposition, inasmuch as many of the distributees are minors, and most of them reside out of the State, and that the description of the property, and relative number and minority of the distributees, are such as to render an equal, fair and beneficial division of the estate impracticable.

5. That the question as to the validity of the will, is grave and difficult, and the respondent is advised it will be wholly unsafe for him to act in that matter, except by the direction, and under the judgment of the Court of Chancery; and he desires and claims this protection, as absolutely necessary for his safety. That all the matters in regard to said will, are stated in the Chancery suit before referred to, for the decision of that court, and no decree can be had until the then next term of that court—which he offers as a reason why the County Court should not proceed to distribute.

6. That it is improper to proceed in the County Court pending the suit in Chancery, inasmuch as different conclusions may be arrived at by each court, and the respondent might be greatly injured by acting under a decree of the Coun-Court for distribution, if the Court of Chancery was to decree the will valid.

7. Respondent admits that the distributees of the estate are correctly described in the petition, as well as the respective slaves they are entitled to, so far as he knows, except that in the petition, the children of Mary Moores, deceased, are not set forth. She died leaving children and grand children, but how many there are, or what are their names, he does not know. They are however residents of Texas, and

Harrison v. Harrison, et al.

entitled to the share of their mother, and should be parties to any proceedings had or taken, in regard to the property of the estate. He therefore prays, if the proceedings are not dimissed or stayed, that the names of such children and grand children, may be ascertained, and they made parties as provided by law, before any further action is taken herein.

8. He refers to the inventory of the estate, ascertaining an accurate description of all of a personal nature, ‡but insists that a larger proportion of the notes, accounts, and other choses in action, are wholly valueless. As to the debts due from the estate, he is advised, his duty is to ascertain and pay them, and that he cannot be called upon to produce an account until the final settlement of the estate, but that whenever required by the court, he will render a full and true account of the same. As to the proceeds of the cotton crops, &c. he is in like manner ready to account when required.

This answer appears to have been filed the 9th December, 1844, and at a court held in the same month, the Orphans' Court, upon the hearing of the petition, answer, and evidence, directed a distribution of the slaves of the estate between the petitioners, the administrator, and the legal representatives of Mary Moores, but as to the share of the latter, took no order. The decree may be thus analyzed:

1. It ascertains that the estate is distributable into eight shares, of which the petitioners are entitled to six, the administrator to one, and the legal representatives of Mary Moores, to one.

2. It directs that the will be set aside as void, and the slaves named in it shall be distributed with the other slaves.

3. It ascertains the manner in which the six shares coming to the petitioners shall be sub-distributed between them, after eight distinct shares shall have been allotted and set apart.

4. It appoints commissioners by name to make the distribution, at such times as they may appoint, and requires the administrator to then produce the slaves before them, preparatory to the distribution.

5. It directs that the allotment shall not be delivered to the several distributees until refunding bonds shall be execu-

ted by those of full age, and the legal guardians of those being minors, with sufficient sureties residing within the State, conditioned to refund a due proportion of any debts or demands which may thereafter appear against said intestate, and the costs attendant upon the recovery of the same.

At the hearing, a bill of exceptions was taken to the decision of the court, from which it appears—

1. That an exception was taken to the presiding Judge, as having been of counsel for the defendants, and a motion made to transfer the cause. The proof on this head, it is unnecessary to state, as the opinion of the court is independent of it. It is proper to remark, that the presiding Judge stated he was not of counsel in the cause, or in any way interested in it.

2. The petitioners then introduced the inventories of the estate returned by the administrator, for the purpose of showing that the assets of the estate, including the cotton crops of 1842-3-4, personal effects, lands, slaves, notes, accounts, &c. were more than sufficient to pay all outstanding demands against the estate, assuming them to be large in amount. The administrator had returned no inventory of debts or demands against the estate, nor did he at the hearing, make any exhibits of any such, except by the introduction of some parol evidence, tending to show some responsibility of the estate for and on account of the estate of one Rochelle, and for and on account of the estate of Wm. R. Meyer, deceased, but nothing definite or certain in either case as to the amount. Both these estates were shown to be solvent.

3. The administrator then produced the former order, of the Orphans' Court, set up in his answer as a bar to the distribution. This, in form, is an order that the administrator have leave to sell the personal estate according to law, and was made the 2d Nov. 1843.

4. He then gave in evidence the bill in Chancery, spoken of in his answer, and proved that an injunction had been served on him, in accordance with its prayer. This bill states that the administrator is about proceeding to sell the slaves of the estate, when there is no necessity to do so, and prays that he may be enjoined; it also has the prayer for general relief. It is filed by the petitioners, with whom is also joined the

other distributee, Mrs. Mary Moores and her husband, and the administrator is the sole defendant.

5. The will of R. B. Harrison was produced, which is to this effect : ' I hereby emancipate and set free the following slaves, [here follow their names,] and wish they should remain in the State of Alabama, provided there can be a special act of the legislature obtained for that purpose. And if not, then it is my will and desire, they be removed to some free State, and be supplied out of the trust property hereinafter mentioned, with suitable means for a comfortable location in the State to which they may be removed. I give and bequeath unto Ephraim Poole, for the sole and exclusive use, benefit and behoof of the said slaves, (repeating their names,) the following negroes, to wit : (naming some twenty-seven.) The same to be kept and managed by the said Poole so long as he continues in the county of Dallas, State of Alabama, as a citizen thereof, for the sole and exclusive use, benefit and behoof of the said emancipated slaves. Certain lands are devised to Poole, for the same trusts, and in the event of his removing from the State, a nephew of the decedent is named to the same trusts.

6. It appears that Mary Moores, wife of Charles Moores, was dead, leaving children and grand children, and she was a sister of decedent, and in her lifetime entitled to a distributive share of one eighth part of the estate. The administrator objected, that this cause was not ready for hearing, and that no binding decree could be made, because her representatives were not made parties. He prayed that for this the cause might stand over, and not be heard until her [heirs were made parties to this proceeding, and so moved the court, but his objection and motion was overruled by the court. The defendant then excepted to the several rulings of the court.

This writ of error is prosecuted by the administrator, who assigns that the court below erred in making the decree of distribution.

1. When all the parties entitled to distribution were not before the court.

2. Because the decree is inconsistent with the order of sale previously granted by another Judge.

3. In proceeding to set aside the will without proper parties for that object, being before the court.

4. In decreeing distribution whilst the proceedings in Chancery were pending and undisposed of.

5. In refusing to transfer the cause to the Chancery Court.

EDWARDS, for the plaintiff in error, cited Leavins v. Butler, 8 Porter, 380,

R. SAFFOLD, contra, referred to the several statutes authorizing distribution of estates, and insisted that the will was wholly void, so as to require no action to set it aside. [Trotter v. Blocker, 6 Porter, 269; Exparte Harrison, 7 Ala. Rep. 736.

GOLDTHWAITE, J.—1. Our statutes of distribution are in a great measure founded on the English statute of 22 and 23 Charles 2, but instead of being confined to cases of intestacy only, extend to all goods, chattels and personal estate not bequeathed. [Clay's Dig. 191, § 1.] The section which allows any person entitled to distribution of an *intestate's estate* to petition the Orphans' Court to compel the administrator to make distribution, after the expiration of eighteen months from the grant of administration, (Ib. 196, § 23,) is similar to a provision of the English statute, fixing the period for distribution at one year from the intestate's death. [4 Burns' Ecl. L. 285.] Its effect is not to limit the jurisdiction of the court to those cases only, where no will is made, but it merely ascertains the period when the distribution shall be made, of all the goods, chattels and personal estate not bequeathed. It is in this view of the difference between our statute and the English act, the decisions of the King's Bench restraining the Eclesiastical Courts from compelling distribution in cases where wills existed, which did not bequeath the entire personal estate, are inapplicable. See Petit v. Smith, 1 Lord Raym. 86; Rex v. Raines, Ib. 363; Hatton v. Hatton, Strange, 865.

2. Taking the statute, then, as ascertaining the period when those entitled to distribution may compel the administrator to distribute the assets of the estate, it would seem to

Harrison v. Harrison, et al.

follow that all such which then existed, in specie, or which had previously been reduced to money were distributable. We are not aware, however, that the statute has received so extended a construction; and the subsequent act of 1820, (Clay's Dig. 196, § 22,) evidently contemplates the distribution shall be confined to such matters as are usually the subject of sale. When these sections are examined in connection with those which relate to the final settlement of the estate by the administrator, either at the instance of those interested in it, or at his own motion, we think it clear the distribution may be compelled after the expiration of eighteen months, although the estate may not then be finally closed, or the outstanding debts actually paid. The administrator, at that time, must be aware of all the demands for which he, under any circumstances, can be made liable, as creditors are required within that period to present their claims, in most cases, and even as to those which are not barred, the innocent distribution will protect the administrator. [Thrash v. Sumwalt, 3 Ala. Rep. 13.] It is not necessary here to determine whether the administrator, upon such distribution, would be entitled to retain for liabilities actually presented to him, but either not admitted, or not reduced to judgment against him, because the existence of any such in this case, was not made to appear. There seems, then, to be nothing in the general features of this case, which should retard the distribution of the personal estate not bequeathed.

3. The exception to the decree of distribution, because it distributes the slaves named in the will as emancipated, and those bequeathed to a trustee for their use, is one of considerable difficulty. It is certain the Eclesiastical courts of England have no jurisdiction to make distribution, when a will of any kind exists. See Petit v. Smith, 1 Lord Raymond, 86, and other cases cited, *supra*. It is equally certain that these courts exercised a jurisdiction to compel the payment of a specific legacy; (4 Burns' Ecl. L. 265, citing Swinb. 18, Terms de La Ley Devise; Ib. 267, citing 1 Roll's Ab. 919;) though the courts of common law and chancery seem always to have looked upon its exercise with a jealous eye, and to have granted prohibitions and injunctions, whenever a question purely legal arose, or a trust was involved. [4

Burns' Ecl. L. 267, and cases there cited.] It is not our present object to trace the origin of this jurisdiction, as it exists without the aid of statutes, because with us the legislature has invested the Orphans' Court with a very extensive control over the whole subject matter of testamentary suits. We have already seen that it has power by the general statute, to compel the distribution of personal property not bequeathed; and by the subsequent act of 1833, the power is extended so as to enable any one entitled to a legacy, or any estate by will, to proceed in the same manner as a distributee. [Clay's Dig. 197, § 24.] The inquiry, whether property is, or is not bequeathed, and whether one is, or is not entitled to a legacy, or other estate, by will, necessarily includes that of the validity and legal effect of the instrument asserted as a will, as well as its construction. In this view of the jurisdiction, the circumstance that the will under which emancipation is attempted to be given to the slaves named in it, was admitted to probate, does not prevent the court from inquiring into, and pronouncing on the validity of the bequests to any greater extent than it would a court of chancery. As to the effect of this will, and the question as to the necessary parties to be before the court, we shall direct our examination in another part of this opinion. But while on this head, it is proper to say, that the jurisdiction of the Orphans' Court, although thus extensive, does not seem to extend to cases where trusts are created by will, when the litigation is between the *cestuis que trust* and the executor as trustee; or in other terms, when the executor, in addition to his powers in that capacity, is also invested with a discretion, and confidence is reposed in him as a trustee. See Leavins v. Butler, 8 Porter, 380; Portis v. Creagh, 4 Ib. 332.]

4. The pretence that the order of sale obtained by the administrator at a previous day, for the sale of the personal estate, prevented its distribution, may be briefly disposed of. If that had remained unaffected by the injunction, it would have presented no bar to the power of the Orphans' Court to set it aside. Neither would the fact that it was not carried into effect, furnish the administrator with any excuse to delay the distribution. If a sale of the slaves was necessary to enable the administrator to discharge the demands against

the estate, we apprehend this was a proper matter to show in opposition to the distribution; if otherwise, it might justly be considered as a mere attempt to delay the proceedings.

5. The bill in chancery filed by the petitioners, as well as by their co-distributee, Mrs. Moores, even if its object had been the final settlement and distribution of the estate could scarcely be insisted on, as precluding an appeal to the more speedy jurisdiction of the Orphans' Court, for the reason that was under the control of the petitioners themselves, and would be unavailing if relief was obtained in the other forum; but without pronouncing a definite opinion how this would be, it is sufficient here to say, that the sole object of this bill is to enjoin the sale of the slaves, and that being obtained, it is questionable if any other decree can be had, or any course pursued than to dismiss the bill. In our judgment it is no bar to the distribution.

6. We do not doubt however, that Chancery has jurisdiction, either at the instance of the distributees, to compel a distribution and final settlement; or at the instance of the administrator, to declare the validity or invalidity of the will. The first principle as asserted in all equity courts, and the generale rule is, that Chancery has a concurrent jurisdiction with the Eclesiastical courts, in all cases, and whichever court is first possessed of the cause, has the right to proceed. [4 Burns' Ecl. L. 266.] The latter is the principle applicable to all trustees, and was extended to an administrator, under a similar will to that exhibited here, in Trotter v. Blocker, 6 Porter, 269. If then, the administrator had first applied to a court of equity to determine the validity of these bequests, or if a declaration by that court was necessary for his protection, it probably would have been proper for the Orphans' Court to have refrained from a final decree until that direction was obtained; but no such application was made on behalf of the administrator, and the decision of the Orphans' Court upon the same matter, being equally conclusive in the event that the proper parties are before it, renders it entirely unnecessary to have the opinion of the other court.

7. We come now to consider the exceptions taken to the proceedings for the want of proper parties, and to the refusal of the court to delay the distribution until the representatives

of the other distributee were brought before the court. In Graham v. Abercrombie, 8 Ala. Rep. 552, this matter was somewhat considered, and we then held that decrees made by the Orphans' Court, although at the instance of one of the parties in interest, would be conclusive if the necessary citations were given by the court. In all suits of this nature, whether for distribution or final settlements, the proceedings may be instituted by one or more persons, and the administrator, as to him, is the defendant. If the distribution or settlement involves the rights of others, they are not concluded by the decree, unless brought before the court; but this duty devolves on the administrator, as he is the party for whose protection it is necessary. This is so fully examined in the case last cited, that a review of the authorities is here unnecessary; they are found in 4 Burns' Ecl. L. 369. So far as the slaves supposed or intended to be emancipated, and the trustee to whom other slaves for their use are bequeathed, are now supposed to be necessary parties, no citation or other proceedings was asked by the administrator in the court below, and therefore the objection here would be too late if the will actually was invalid, and would be unimportant if otherwise, because the decree upon its merits, in that event, would be reversed. But in relation to the other distributee, who was not before the court, the application was specific, that the cause should not proceed until her representatives had been cited. This distributee is interested in the allotment or division of the slaves, and the decree would not be binding on her, or her representatives, unless cited to appear and made a party. This the administrator, for his own protection, has the right to require, and having required and been refused, the decree for this cause must be reversed. No particular stress was laid on this matter in the argument at bar, nor was its controlling effect discovered, until the opinion was about to be written, which will account for the decision being different from that at first intended.

9. The decree, in point of form, contains no substantial error, so far as we have had our attention called to it. It is perhaps irregular, in directing what shall be done upon the return by the commissioners of the distribution of the slaves among the petitioners. In point of practice, the return and

report of the commissioners is subject to exception and revision, and it is only upon its confirmation by the court that the final order to deliver the property, is proper, and it is at that time, or subsequently, the refunding bond is examined and approved by the court.

9. We omitted to mention in its proper place, our conclusion as to the will itself. That is so fully covered by the decision of Trotter v. Blocker, 6 Porter, 380, and Coleman v. Alston, 7 Ala. Rep. 795, as to require no other consideration than to state its invalidity, as opposed to our local law. The bequest of emancipation, and that for the use of the slaves intended to be freed, are entirely void.

Judgment reversed and remanded, in order that the representatives of Mrs. Moores may be cited, and made parties if they appear. And also, that the trustee for the slaves may be made a party, if the administrator desires it.