# Foxworth *v.* White.

*Bill in Equity by Legatees to re-open Settlement of Executor's Accounts, and remove Settlement into Chancery Court.*

1. *Keeping estate together under will; whether personal trusts or executorial duties are conferred.*—Testamentary provisions authorizing and directing an executor to keep the estate together for the term of ten years, cultivating the lands with the labor of slaves, and, at the expiration of that term, to sell all the property not specifically bequeathed, and divide the proceeds of sale among the several legatees, construed in the light of the statutory provisions which, in 1863–4, authorized the Probate Court to confer similar powers on executors, do not impose personal trusts upon the executor, but duties and powers strictly executorial, which he could not exercise without the grant of letters testamentary, and which might be exercised by an administrator with the will annexed.

2. *Equitable relief against probate decree.*—When a final settlement of an executor's accounts has been made in the Probate Court, no trusts being involved, and no fraud imputed, a court of equity will not re-open the settlement, unless some special cause for its interposition is shown.

3. *Sale of decedent's lands to pay debts; jurisdiction of court, and conclusiveness of decree.*—The jurisdiction of the Probate Court to order a sale of lands belonging to a decedent's estate, for the payment of debts, attaches on the filing of a petition by the personal representative, showing a necessity for the sale; and when the jurisdiction of the court has thus attached, and an order of sale has been rendered, such order is conclusive as to the insufficiency of the personal assets, and the existence of debts for which the lands are liable, and it can not be collaterally impeached on account of irregularities in the proceedings.

4. *Purchase by executor at his own sale, or from his vendee; when set aside.*—A purchase of lands by an executor at his own sale, whether directly in his own name, or indirectly through the agency of a third person, and whether made under an order of court or a power in the will, will be set aside in equity, at the mere election of the parties in interest if seasonably expressed; but, having made a fair sale to a third person, he may afterwards purchase from his own vendee, and thereby acquire a good title, though the transaction will be jealously scrutinized by a court of equity.

5. *Contracts of executor in carrying on business for estate.*—When an executor continues to carry on, under powers conferred by the will, the business in which his testator was engaged, he is personally liable on his contracts, and persons who deal with him can not charge the estate with his debts; but the estate is bound to indemnify him on account of debts properly incurred in carrying on the business; and, when he is not in default to the estate, the creditors may be subrogated to his right of indemnity; and when this is effected by a private arrangement between the parties, a court of equity will sanction and uphold the transaction.

APPEAL from the Chancery Court of Wilcox.

Heard before the Hon. CHARLES TURNER.

The bill in this case was filed on the 6th December, 1875, by Eliza M. White and others, children of Caleb E. White, de-

[Foxworth v. White.]

ceased, who, being infants, sued by their mother as next friend, claiming as legatees under the will of Mrs. Eliza F. McNeill, deceased; against Francis G. Foxworth, both individually and as executor, and against his wife and children, and several other persons claiming under or through him; and sought to set aside a settlement of said executor's accounts which had been made in the Probate Court, and to remove his administration of the estate into the Chancery Court; also, to set aside a sale of lands belonging to the estate, at which Robert H. Erwin became and was reported as the purchaser, a conveyance of the lands by Erwin to said F. G. Foxworth, and a subsequent conveyance by Foxworth to R. H. Dawson and others as trustees.

Mrs. McNeill's will, a copy of which was made an exhibit to the bill, was dated the 29th September, 1863, and was regularly admitted to probate in said county, the place of her residence, on the 15th April, 1864. Said F. G. Foxworth, who was the brother of the testatrix, was nominated as executor of the will, and letters testamentary were granted to him on its probate, By the third and fourth clauses of the will, which are copied in the opinion of the court, the testatrix directed that her plantation should be kept up, and cultivated with the labor of the slaves, for the term of ten years; and that, at the expiration of that period, all the property belonging to her estate should be sold, except that portion disposed of in specific legacies and bequests, and the proceeds of sale be equally divided among some of the children of said F. G. Foxworth and the children of said Caleb E. White, who was a nephew of the testatrix. The executor kept up and cultivated the plantation until about the close of the year 1873, having obtained in the meantime several orders from the Probate Court authorizing him to hire laborers to cultivate the lands; and he also sold during those years, under orders of the court, several mules and other kinds of property, for the payment of debts. On the 10th November, 1873, he filed a petition in said Probate Court, alleging that the personal assets of the estate were insufficient for the payment of debts, and asking an order to sell the lands for that purpose. On the 22d December, 1873, the court granted an order of sale as prayed, directing the sale to be made for one-third cash, and the balance on a credit of one and two years, with interest. The sale was made on the 17th January, 1874, and Robert H. Erwin, of the mercantile house of Watson, Erwin & Co., was declared the purchaser, at the price of $5,100. The executor reported the sale to the Probate Court, and that the whole of the purchase-money was paid in cash; and thereupon the sale was confirmed on the 19th January, 1874, and a conveyance executed to said Erwin as the purchaser. On the same day, January 19th, 1874, Erwin and his wife conveyed

the lands, by quit-claim deed, on the recited consideration of ten dollars in hand paid, to said F. G. Foxworth, who, on the 22d January, 1874, by a deed in which his wife joined with him, conveyed the lands to R. H. Dawson, E. N. Jones, and R. C. Jones, as trustees, with power of sale, to secure the payment of certain specified debts. The debts specified in the deed were—1st, a promissory note for $1,679.90, past-due, and payable to Watson, Erwin & Co., signed by said Foxworth as executor, and said to be assumed by him individually; 2d, a debt due to said E. N. and R. C. Jones as partners, for $600; 3d, a debt due to J. G. Oates, for $269.48; 4th, a debt due to R. C. Godbold, for $1,462,—all of which debts were evidenced by promissory notes signed by said Foxworth. These debts not being paid at maturity, the trustees advertised the lands for sale under the deed; and the bill prayed an injunction of this sale.

The bill alleged, that the estate of the testatrix owed but few debts at the time of her death, and had ample personal assets to pay them; that all of those debts were paid before any order was obtained from the Probate Court authorizing the executor to keep the estate together, and to hire laborers to cultivate the lands; that the executor, acting under authority supposed to be conferred by said orders, contrary to the provisions of the will, borrowed money and obtained supplies and advances from the mercantile house of Watson, Erwin & Co., and attempted to charge the estate with the payment of the debts thus contracted; and that these were the principal debts for which the order to sell lands was obtained, and the lands sold. The bill alleged and charged, also, that the sale to said Erwin "was not a *bona fide* sale for $5,100, as pretended and recited in said deed to him, but, on the contrary, was made by fraud and collusion between said executor and said Erwin to cheat and defraud your orators of their just rights under the will aforesaid; that said deed from said Erwin and wife to Foxworth was not a *bona fide* sale for a valuable consideration, as therein recited, but was made with the intent more fully to carry out said fraud upon the rights of your orators; that said Foxworth and wife had no right to execute said conveyance to said trustees, nor to charge said lands with the debts and trusts therein mentioned; and that said three deeds are parts of one and the same transaction and contrivance to defraud your orators. And your orators charge, upon the advice of counsel, that said executor, under the provisions of said will, became a trustee for the management of said estate, during the ten years it was by the will ordered to be kept together, under the orders and control of this court, and not under said Probate Court; that said several orders of said Probate Court, to contract debts for the hire of laborers,

[Foxworth v. White.]

and for the sale of said property, were upon matters not within the jurisdiction of said court, and were made in contravention of the provisions of said will, and are null and void;" and that the several defendants, holding and claiming under these orders and conveyances, were chargeable with notice of the complainants' rights, and liable to account to them as trustees. It was alleged, also, "that said executor made several partial settlements, and on the 12th October, 1874, made in said Probate Court a final settlement of his said administration, in which he was erroneously allowed large credits against said estate, to which he was not entitled, and which said court had no authority to allow, including large sums borrowed to carry on said plantation contrary to the provisions made in the will." On these allegations and charges, the complainants prayed that the trustees be enjoined from selling the lands under the deed; that the several conveyances of the land be set aside, and declared null and void; that the several settlements made in the Probate Court be opened, and the errors corrected; that the administration of the estate be removed into the Chancery Court, and there finally settled, with all matters of account growing out of these several matters.

A joint answer, under oath, was filed by Dawson and the other trustees, denying all the charges of fraud or collusion in the transactions impeached by the bill, and thus stating the facts connected with the sale and conveyances of the land : "After the personal property had been sold by said executor, it was found that $5,100 remained unpaid, and that it would be necessary for the lands to bring that amount, in order that the estate might pay all its debts; and it was then agreed among the creditors, that the lands, if they did not bring that much, should be bid off to R. H. Erwin for that sum, who should hold them as trustee for the creditors; and if he could not sell them for the amount of his bid, he should then make the best disposition of them he could for the benefit of the creditors. The lands were then offered for sale, and were bid off to said Erwin, under said agreement, there being no other bid, although there was a large crowd present. Said Erwin was not present at the sale, and, when he was informed of it, he objected to what had been done, but, being urged by the other creditors, he consented to accept the trust which they had conferred upon him. The creditors then gave Foxworth receipts for the amounts which the estate owed them respectively, which receipts were taken by him as money. He then reported the sale, and the payment of the purchase-money by Erwin, and, by order of the court, executed and delivered to him a deed for the lands. Afterwards, but on the same day, Erwin proposed to Foxworth that he (F.) should buy the lands, as he was the largest creditor, and attempt

[Foxworth v. White.]

to work out the other debts. We were present at the interview between them. Foxworth objected to buying the lands, because, as he said, he had made bad crops for a series of years, and had no means to go on; but, upon Erwin's promise that Watson, Erwin & Co. would advance to him, he agreed to take the lands. Erwin and wife then executed a deed to him, and he executed the deed of trust to these respondents." The same account of these matters was given in the answer of Foxworth, also under oath; and he denied all the charges of fraud, insisted on the regularity and validity of all his official acts, and set up as conclusive the settlements made in the Probate Court.

Copies of the several conveyances, and of all the proceedings had in the Probate Court in connection with the sale of the lands and the orders for keeping the estate together, were made exhibits to the bill. No testimony was taken by either party, but the cause was submitted for final decree on the pleadings and exhibits. The chancellor held the complainants entitled to relief, and rendered a decree for them as prayed in their bill; and this decree is now assigned as error.

COCHRAN & DAWSON, and E. W. PETTUS, for apppellants.

S. J. CUMMING, contra. (No briefs on file.)

BRICKELL, C. J.—The first and second items of the will of the testatrix contain specific bequests. The third and fourth items read as follows: "*Item third.* My will and desire is, that the balance of my negro property, mules, stock of all kinds, mill, gin, &c., which I now or may hereafter own at my death, shall be kept together on my plantation, for the term of ten years, and used and worked thereon; and the moneys therefrom, after paying the expenses of the same, to go to the education of all my beloved brother F. G. Foxworth's children, except Dudley, Ellen and Cordelia." "*Item fourth.* It is further my will and desire, at the expiration of ten years, all my real estate of every character and description, together with all my personal and perishable property, not specifically hereinbefore given and bequeathed to Ellen and Cordelia Foxworth, shall be sold and equally divided between the children of F. G. Foxworth (except Ellen and Cordelia), and the children of my nephew Caleb E. White." The principal question now presented is, whether by these items of the will testamentary trusts were not created, and powers were not conferred, converting the executor into a trustee, and excluding the jurisdiction of the Court of Probate to take cognizance of his administration of them.

The statute, in very general terms, confers on the Court of

[Foxworth v. White.]

Probate original jurisdiction of " the settlement of the accounts of executors and administrators."—Code of 1876, § 691.   The duties of these representatives, in the course of administration, are, in many respects, defined and declared, and there are many powers they may, by the decree of the Court of Probate, be authorized to exercise, which could not have been devolved up-on them by any court at common law, and which, if conferred by will, created trusts strictly of equitable cognizance.   Though the grant of jurisdiction to the Court of Probate is expressed in general terms, there is a class of cases, involving testament-ary trusts and powers, in which it has not jurisdiction to set-tle the administration of an executor.   This class of cases can not, perhaps, be very accurately described.   In *Harrison v. Harrison*, 9 Ala. 478, it was said, the Orphans' Court, the pre-decessor, and of like jurisdiction with the Court of Probate, could not take jurisdiction of trusts created by will, "when the litigation is between the *cestuis que trust* and the executor as trustee; or, in other terms, when the executor, in addition to his powers in that capacity, is also invested with a discretion, and confidence is reposed in him as trustee."   In all the cases bearing upon this question, which have been regarded as ex-cepted from the general jurisdiction of the court to settle the accounts of executors or administrators, there was, by the will of the testator, the union in the same person of the relations of trustee and executor—different and distinct rights and duties meeting in him.   The trusts distinguishable from the execu-torial duties, involving discretion, were personal, and most generally of such a character that they could have been as-sumed and executed, if the executorship had not been accepted. *Portis v. Creagh*, 4 Port. 232; *Leavens v. Butler*, 8 Port. 380; *Billingsley v. Harris*, 17 Ala. 214; *Harrison v. Harrison, supra; Ex parte Dickson*, 64 Ala. 188.

The keeping of estates together by executors or administra-tors, under orders of the Court of Probate, especially when the estate consisted of a plantation—of lands, slaves, stock, farming utensils, implements and appliances—at the time the will of the testatrix was executed, and for a long period prior thereto, was a policy favored by the statutes; and testamentary provis-ions for the same purpose were of frequent occurrence.   The sales of lands, or of personal property, for partition between legatees or devisees, it was a duty of the executor (not having power under the will) to obtain an order of the Court of Pro-bate to make, when otherwise an equitable partition could not be effected.   It was in view of the policy and usages then pre-vailing, that the testatrix devolved upon her executor the duty of keeping her estate together for the same period the statutes empowered the Court of Probate to authorize it to be kept to-

gether, and, upon the expiration of that period, the duty and power of making sales of it to effect distribution to her legatees. The duties and powers are executorial—they are not mere naked trusts resting in personal confidence. These powers could not have been exercised until after the probate of the will, nor without an acceptance of the office of executor. Resulting from the office of executor, and charged upon the executor as executor, an administrator *cum testamento annexo* would have succeeded to them. For the general rule is, that the duties of an executor resulting from the nature of his office, and charged upon him as executor, devolve on an administrator *cum testamento annexo*, where the authority is not necessarily connected with a personal trust or confidence reposed in him by the testator.—*Farwell v. Jacobs*, 4 Mass. 634; *Commonwealth v. Forney*, 3 Watts & Serg. 353. We are of the opinion, the jurisdiction of the Court of Probate to settle the adminstration of the executor was plenary—that there are no trusts involved of which it could not take cognizance and enforce.

2. The jurisdiction of the court having attached, a final decree having been passed, embracing the subject-matter of the bill, so far as relief is claimed because of the administration of the executor, in the absence of fraud, or some other special cause for interposition, a court of equity can not intervene and re-open the settlement.— *Waring v. Lewis*, 53 Ala. 615; *Otis v. Dargan, Ib.* 178.

3. The petition for the sale of lands avers the insufficiency of the personal property for the payment of debts,—the fact upon which the jurisdiction of the Court of Probate to order a sale depended. The jurisdiction attached upon the filing of the petition, and errors or irregularities, if any occurred, in the course of the proceedings, will not affect the validity of the decree of sale, when drawn in question collaterally.—1 Brick. Dig. 939, §§ 353 55. It can not now become a matter of inquiry, fraud not being imputed, whether the debts or any of them, for the payment of which the sale was decreed, were properly and legally chargeable on the lands. In the rendition of the decree, the Court of Probate, having jurisdiction, is presumed to have adjudged every fact necessary to its validity. That there were debts, to the payment of which the lands were subject; and that the personal assets were insufficient for their payment; were facts adjudged and determined, and finally adjudged and determined.—*Florentine v. Barton*, 2 Wall. 210; *Lanford v. Dunklin*, 71 Ala. 594.

4. It can not now be doubted, that a purchase by an executor, either directly or indirectly, at a sale made by himself, whether he sells under an order of court, or under a power in a will, will be set aside absolutely at the mere election of par-

[Foxworth v. White.]

ties in interest, seasonably expressed. An exception to the general rule was, at an early day, applied to an executor or administrator having an interest, purchasing chattels at his own sale, for full value, if the sale was fairly conducted.—*Brannan v. Oliver*, 2 Stew. 47; *Julian v. Reynolds*, 8 Ala. 680; *McLane v. Spence*, 6 Ala. 894; *McCartney v. Calhoun*, 17 Ala. 301; *Montgomery v. Givhan*, 24 Ala. 568; *Andrews v. Hobson*, 23 Ala. 219; *Charles v. DuBose*, 29 Ala. 367. Whether the exception should be applied to sales of chattels only, has not been decided; though it was said in *Calloway v. Gilmer*, 36 Ala. 358, the court was not inclined to the limitation. It is not necessary now to consider that question; for the executor was without any interest, which would have brought him within the exception, if the sale had been of chattels. Nor was he the purchaser at his own sale, but a subsequent purchaser from the purchaser, immediately after the sale. After a fair, actual sale to a third person, a trustee may buy of his own vendee, and the purchase will be free from the infirmity of a purchase made at his own sale, and he will acquire a title the *cestuis que trust* can not impeach. The transaction will, however, be jealously scrutinized by a court of equity; all circumstances of suspicion attending it must be neutralized, by clear and convincing evidence, and every presumption of indirection must be repelled. *James v. James*, 55 Ala. 525. Taking the answers as true, there was a fair, actual sale of the lands under the decree of the Court of Probate, at which a purchase for the value of the lands was made in the name of Erwin. It was not then contemplated that there should be a re-sale to the executor. The re-sale was a subsequent, independent transaction, into which the executor was reluctant to enter, and was only induced to enter upon promises of aid in cultivating the lands in the future, to enable him to repay the debts, which he had accepted in payment of the purchase-money. If these facts be true, all suspicion is removed from the transaction, and all presumption of indirection is repelled. The cause was heard on bill and answers, without testimony; the oaths of the respondents to the answers were not waived, and they must be taken as true, so far as responsive to the bill.—Code of 1876, § 3786.

5. A testator has a power of disposition almost unlimited, as to so much of his property as is not necessary for the payment of his debts. The rights of creditors not being infringed (and as to them the provisions of the will are presumed to have been intended to be subordinate), he may, if he does not offend positive law, or a well known public policy, make that disposition of his estate he may choose; and it can not be avoided though it may to others appear to be manifestly unwise, injudicious, or capricious, or unjust, or ungenerous.—*Atwood v.*

[Foxworth v. White.]

*Beck*, 21 Ala. 590. The business or trade in which he may be employed, is not, by operation of law, transmissible to his personal representative, except to a very narrow, limited extent; and a continuance of it by the representative is a breach of duty, from which only liability and loss to him can result. The testator may authorize its continuance; and if it is authorized, and the executor assumes to exercise the power, he renders himself personally liable for debts he may contract in the continuance of the business.—*Ex parte Garland*, 10 Vesey, 119; *Morrow v. Morrow*, 2 Tenn. Ch. 549. Those with whom he deals, can not proceed directly against the estate of the testator. The estate is bound, however, to the indemnity of the executor for all debts and expenses properly incurred in the continuance of the business, when the continuance is in the exercise of a power conferred by the will, or under the authority of a court of competent jurisdiction. If he is not in default— if he is not, on a just settlement of his accounts, indebted to the estate; if the debts incurred by him are in truth advances properly made by him in the prudent exercise of the power, the creditors dealing with him have an equity to be subrogated to his right of indemnity from the trust estate.—*Steele v. Steele*, 64 Ala. 438, and authorities cited. Assuming it to be true that the purchase-money of the lands was paid largely by the payment of debts the executor had incurred in keeping the estate of the testatrix together under the power conferred by the will, or under the orders of the Court of Probate (which we are inclined to regard as superfluous and unnecessary), the necessity and propriety of the expenditures, for which the debts were contracted, was matter which could have been litigated on the final settlement of the executor in the Court of Probate. The decree of the court rendered on the settlement, until it is successfully impeached for fraud, or reversed by an appellate court, is a conclusive adjudication of the necessity and propriety of these expenditures, and that for them the executor was in advance to the estate.— *Waring v. Lewis*, *supra; Otis v. Dargan*, *supra.* A court of equity would have subrogated the creditors to the right of the executor to indemnity for the advances. The parties, by the arrangement, simply accomplished that which a court of equity would have decreed; and that it was their right and duty to do without the delay and expense of litigation.

The decree of the chancellor is not consistent with these views; and it must be reversed, and the cause will be remanded.