# Monnin v. Beroujon & Wife.

*Bill in Equity for Correction of Errors in Probate Decree on Settlement of Guardian's Accounts.*

1. *Conclusiveness of probate decree rendered by agreement.* — A writing, signed by the ward and her husband, certifying that they have carefully examined the accounts of her guardian, as filed by him for settlement with the probate court, and have found them correct, and that they desire the court to approve them as stated, does not estop them from afterwards maintaining a bill in chancery (Rev. Code, §§ 2451, 2274) to correct errors of fact or law in the settlement.

2. *What errors may be corrected in chancery; and what is fault or negligence.* — The statement of the guardian's accounts in such manner as to charge the ward in lawful money with the Confederate prices of articles bought for her, and to set off Confederate money beyond his receipts of such currency against debits in lawful money, is such an error as authorizes a resort to chancery for correction; and

[Monnin v. Beroujon.]

when the settlement was made in 1868, no presumption of fault or neglect on the part of the ward can be indulged, since the *status* of Confederate currency was at that time an unsettled question.

3. *Restatement of guardian's accounts in chancery.* — Under a bill in chancery to revise and correct errors in a probate decree, rendered on the final settlement of a guardian's accounts, the corrections ought to be confined to the errors specifically pointed out, unless the settlement is fraught with error ; and actual transactions, made in good faith, and not shown to work positive injustice, ought not to be set aside capriciously, because the opinions of witnesses may raise doubts as to their propriety.

4. *Allowance to guardian for ward's board.* — If the ward resided with her guardian during the war, he is entitled to an allowance for the reasonable value of her board in lawful money ; but, in ascertaining this value, it is not proper to find the price in Confederate currency, and reduce that to its value in gold or United States currency.

5. *Receipts and disbursements of Confederate money.* — Receipts of Confederate currency by the guardian should be set off against his disbursements in the same currency ; and any excess of such disbursements should be credited to the guardian at its value in United States currency at the time.

APPEAL from the Chancery Court at Mobile.

Heard before the Hon. ADAM C. FELDER.

The bill in this case was filed on the 16th March, 1869, by W. V. Beroujon and Clara, his wife, against Louis Monnin, the late guardian of Mrs. Beroujon ; and F. M. Shaw and Louisa, his wife, who was the sister of Mrs. Beroujou, were also joined as defendants. The object of the bill was to correct certain alleged errors in a probate decree, rendered on the 6th April, 1868, on final settlement of the accounts of said Monnin as the guardian of his two wards, Mrs. Beroujou and Mrs. Shaw. There was a demurrer to the bill for want of equity, which was overruled ; and on final hearing, on pleadings and proof, the chancellor rendered a decree for the complainants, and ordered the register as master to state an account between the parties ; and on the coming in of the report, which was confirmed, he rendered a decree against the defendant, in favor of the complainants, for $2,068.44, with interest from the 1st April, 1868, $804.39, together amounting to $2,872.83. From this decree the defendant appeals, and here assigns it as error, together with the overruling of his demurrer to the bill, and the overruling of several exceptions to the register's report, which require no special notice.

C. W. RAPIER, for the appellant. — 1. The demurrer to the bill ought to have been sustained, because the facts stated do not negative fault or neglect on the part of the complainants. The account, as stated, was submitted to them ; they had ample opportunity to examine it, and they admitted its correctness.

2. The allegations of fraud in connection with the alleged errors are loose and indefinite, and are not supported by the evidence. The court will not force conclusions of fraud, when the facts may well consist with honesty and fair dealing.

·[Monnin v. Beroujon.]

*Smith's Heirs* v. *Br. Bank*, 21 Ala. 135 ; *Ala. Life Insurance & Trust Co.* v. *Pettway*, 24 Ala. 566.

3. The settlement of April, 1868, was a family compromise, fairly and voluntarily made, without any fraud, concealment, or misrepresentation ; and such settlements are upheld in equity with a strong hand. In the absence of fraud, or gross mistake, which must be positively and clearly shown, a party is bound and estopped by his compromises. 1 Story's Equity, §§ 131, 132, 523, 526, 527 ; 11 Wallace, 237.

4. The parties should have been held to the errors and mistakes specifically alleged in the bill.

L. GIBBONS, *contra.* — 1. The settlement in the probate court was not conclusive on the complainants. Courts of equity will not permit transactions between guardian and ward to stand, even when they have occurred after the termination of the relation, unless the most abundant good faith on the part of the guardian is shown, and the fullest information and deliberation on the part of the ward. .In such cases, the ward is presumed to still labor under the undue influence of the guardian, and a court of equity will relieve him from its effects. 1 Story's Equity, §§ 317–22 ; *Osmond* v. *Fitzroy*, 3 P. W. 131 ; *Hamilton* v. *Mohun*, 1 P. W. 118 ; *Dawson* v. *Massey*, 1 Ball & B. 226 ; *Hylton* v. *Hylton*, 2 Vesey, Sr. 548 ; *Wood* v. *Downes*, 18 Vesey, 126 ; *Hatch* v. *Hatch*, 9 Vesey, 297 ; *Wright* v. *Proud*, 13 Vesey, 136 ; *Ormond* v. *Ormond*, 13 Vesey, 52, and note at end of case ; *Garvin* v. *Williams*, Amer. Law Register for October, 1872, p. 642.

2. The complainants do not complain of the account as originally stated and shown to them. They admit the correctness of the items as then stated, and only object to the changes since made in it, without their knowledge or consent, and to the forced balances and forced conclusions attempted to be drawn from them. The errors of which they complain appear on the face of the account, and are fully substantiated by the defendant's own admissions.

3. As to the principles on which an account between guardian and ward should be stated, the court is referred to the following cases : *Bryant* v. *Craig*, 12 Ala. 354 ; *Depeyster* v. *Clarkson*, 2 Wendell, 77 ; *Calhoun* v. *Calhoun*, 41 Ala. 369.

B. F. SAFFOLD, J. — The appellant was, for about fifteen years, the guardian of his wife's two daughters, Louisa and Clara Chigazola, now Mrs. Shaw and Mrs. Beroujon. In 1868, after their marriage, he filed his accounts for a final settlement, accompanied with the following writing, signed by the wards and their husbands : " We certify, that we have care-

[Monnin v. Beroujon.]

fully examined the foregoing account, and that the same is correct in all respects ; and further, that we desire the same to be approved by the court." The account was passed, and decrees were rendered against him in accordance with it, which he satisfied. Subsequently, Mrs. Beroujon and her husband instituted this suit (under R. C. §§ 2451, 2274), to correct errors in the settlement, which they specified.

[1.] The privilege of the correction is granted to any party injured, and, of course, is available to the guardian as well as to any other, if his fault or neglect is dispelled. The certificate of approval of the account, signed by the complainants, can operate no more strongly in preclusion of their right to maintain this action, than the filed accounts of the guardian, or other fiduciary, should do against him.

[2.] The complainants do not dispute the items of the guardian's account; but they claim that he has charged Mrs. Beroujon, in lawful money, with the Confederate price of a piano, and has credited himself, in lawful money, with Confederate currency, beyond his receipts of the latter. These objections are well founded, as appears from his own frank and ingenuous statements, which entirely acquit him of any intention to seek such advantage. The settlement proposed by him, and acceded to by his wards, is clearly shown to have been marked by a commendable generosity on both sides ; and the errors discovered are such as were not perceptible to any of them at the time. How Confederate money should be accounted for, under like circumstances, has required time and the severest reasoning and criticism to determine. The rule adopted by this court is not such as at one time prevailed. It seems now to be sanctioned by the current and weight of authority. But the laborious process by which it has been reached repels any presumption of fault or neglect on the part of the complainants, and also any suspicion of improper conduct or motive on the part of the defendant.

[3, 4, 5.] The chancellor ordered an entirely new settlement to be made. This, though not error, seems to have been unnecessary. The evidence filed in the court of probate was obliged to be received as evidence in the court of chancery. The accounts and vouchers of the guardian, and the writing signed by the complainants, proved the correctness of the settlement, except in the particulars above mentioned. The other evidence adduced shows that the guardian had not kept a rigid account against his wards, collectively or separately, and that in the economy of the family it would have been exceedingly difficult to do so. His receipts were simple, and his own statement of them is not in the least impugned by any witness. It is not pretended that the settlement was so fraught with error

[Monnin v. Beroujon.]

as to require its thorough revision. But for the exceptions, which must be allowed, no dissatisfaction would have arisen; and the agreement of the parties ought to establish so much of the accounts as is not assailed. The advantage of this is made manifest by the wide range taken by the register, and the grievous costs which must have been accumulated. He took the original account for a basis, but, instead of confining his inquiries to proofs of error in its items, he has, in some respects, conformed the actual transactions of the guardian to the varied and rather fanciful opinions of the witnesses. For instance, departing from the charges made by the guardian for the board of his wards during the war, he has fixed a Confederate price for those years, and then reduced it to a gold value. In this way, he allows the guardian $25ᵒᵒ a month in 1862, and $13ᵒᵒ a month in 1864. All of the credits allowed in 1865 he reduced to lawful money price; and the receipts of rent from January to April of that year he reduced to good money, at the rate of fifty to one.

All of the Confederate money received by the guardian was derived from rents of real property, and his disbursements in that currency were in excess of his receipts. This excess might have been credited to him at its value in lawful money. But there was no propriety in measuring his charge for board by its Confederate value, reduced to gold, or United States currency, any more than in providing a like standard of measure for the interest he was to pay on the money in his hands. His receipts of rents in Confederate money in 1865 ought to have been set off against so much of his disbursements in the same currency.

We think a simple correction of the errors appearing in the account, and shown by the answer of the guardian, will do ample justice to all of the parties. The account may be thus stated:—

Money originally received by the guardian . . . $4,641.41
Fifteen years' interest on same . . . . . . . . 5,569.65
Rents from real estate . . . . . . . . . . 13,717.01

Total . . . . . . . $23,928.07
Of this there was in Confederate money, $3,625.66.

He expended on account of the joint property, and of the wards severally,—

In good money . . . . . . . . . . . . . $16,098.75
And in Confederate money . . . . . . . . 5,430.13

Total . . . . . . . . $21,528.88

Balance due from him in good money . . $4,203.66
"        " to him in Confederate money . 1,804.47

[Monnin v. Beroujon.]

The balance against him is subject to reduction by the amount of his commissions, five per cent. on his total receipts, which should be allowed in consideration of his liberality to his wards on the occasion of their marriage, and the difficulty of computing the difference of compensation on so inconsiderable a portion of Confederate money; and also by the above balance due to him, graduated to $180, from expressions of concurrence in that ratio made by both parties. Thus: —

| | | |
|---|---|---:|
| Balance due from guardian . . . . . . . . . | | $4,203.66 |
| Less commissions . . . . . . . | $1,196.40 | |
| And amount scaled . . . . . . | 180.00 | |
| | | 1,376.40 |
| | | $2,827.26 |

Credit by amounts paid since decree of probate court:
To Mrs. Shaw, $138.59; to Mrs. Beroujon, $1,034.20. Total credit . . . . . . . . $1,172.79

Balance of debit . . . . $1,654.47

The expenditure on the joint account, charging Mrs. Beroujon with the piano, is $2,437.99. This amount, with $1,376.40, above allowed for commissions and Confederate money scaled, deducted from the total debits, $23,928.07, shows the share of each ward to be $10,056.84. The separate charges against Mrs. Shaw are : in the account, $9,757.50, and $138.59 paid after the settlement in the probate court, leaving a balance due to her of $160.75. Those against Mrs. Beroujon are $7,533.39 in the account, and $1,034.20 paid since the settlement in the probate court, leaving a balance due to her of $1,489.25. These two balances found in favor of the wards respectively, make up the amount computed against the guardian as nearly as is practicable to do, the difference being less than five dollars. The piano having been credited to the guardian in the allowance made to him for the excess of his disbursements over his receipts of Confederate money, is subject to division between the wards, about which they had better agree.

Nothing is more difficult than to precisely adjust the accounts of a long guardianship or administration. It is not altogether just, after the fiduciary has exercised his best judgment, to have his acts variously estimated by the superficial or slightly considered opinions merely of unconcerned witnesses. If expenses actually incurred, or charges made at the time, are not unreasonable, they ought not to be capriciously set aside, or altered, because somebody else thinks he would have done

[Whitfield *v.* Woolf.]

differently under the circumstances. When such items have been passed on by a court of competent jurisdiction, they especially ought not to be interfered with, unless positive injustice has been done. In this view of the case, the decree of the chancellor will be reversed, and a decree rendered in this court in accordance with the calculation above made, to bear interest from the date of the probate decree ; and the costs of the appeal in this court and the chancery court will be charged against the appellees, while the costs of the suit in the chancery court will be charged against the appellant.

Reversed and rendered as above.