# Chambers *v.* Chambers.

*Bill in Equity by Administrator Against Heirs who had Secretly and Wrongfully taken Possession of the Effects of the Estate.*

1. *Trespass or larceny, but not a trust.*—A bill by an administrator charging heirs of the estate with secretly and wrongfully taking possession of the money and papers of the intestate, about the time of his death, and appropriating the same to their own use, alleging the insolvency of the wrong-doers, and asking the appointment of a receiver, charges a trespass or larceny, but not a trust, and is without equity.

[Chambers v. Chambers.]

APPEAL from Barbour Chancery Court.
Heard before the Hon. JERE N. WILLIAMS.

A. H. MERRILL and ALSTON & PEACH, for appellants.—1.
There can be no trust in case of trespass or larceny, as
charged, and the Chancery Court has no jurisdiction in such
cases.—*Doyle v. Murphy*, 74 Am. Dec. 165 (Decisive of this
case); *Weer v. Grand*, 88 Ill. 490; *Steele v. Clark*, 77 Ill.
471.     2.     The fact that there may be no *successful* remedy at
law adequate to recover the money and effects belonging to
the estate in the possession of the defendants, by reason of
their insolvency, is not of itself a ground of equitable inter-
ference.     The *remedy* alone is to be considered.     If it ex-
ists, and is ordinarily adequate, its possible want of success
is not a consideration.—*Heilman v. Union Canal Co.*, 37 Penn.
State Rep. 100–4.     The statute is merely affirmatory of the
common law.—*Sumter County v. Mitchell*, 85 Ala. 318; 93
Ala. 542.     3.     The right to recover the money and effects
was that of a chose-in-action, whether by the intestate, if
living, or by personal representative after his death.—*Doyle
v. Murphy, supra.*

G. L. COMER, and A. A. EVANS, for appellee, cited Perry on
Trusts, §§ 245, 265; *Ex parte Walker*, 25 Ala. 81; *Ashurst v.
Lehman, Durr & Co.*, 86 Ala. 370; 93 Ala. 201.

McCLELLAN, J.—This bill is exhibited by J. W. Cham-
bers and W. H. Chambers, as the administrators of the es-
tate of Isaac H. Chambers, deceased, against George H.
Chambers, Mary A. Chambers and Malinda Chambers, who
are, as are also the complainants, heirs at law and children
of the intestate.     The case made by its averments, is this:
Isaac H. Chambers, during his last illness, had at his resi-
dence, but in a different room from that in which he lay, a
fire-proof combination lock safe, in which he kept a consid-
erable sum of money—about four thousand dollars—some
account books, and choses in action, a mortgage evidencing
and securing an indebtedness amounting to about twelve
hundred dollars of said George Chambers to him, being
among the latter.     On the forenoon of the day preceding his
death, said Mary Chambers, being alone in the room with
her father, "asked him for the combination of the safe, stat-
ing certain reasons for wanting it; he told her that the paper
with the combination on it was in his coat pocket, but re-
fused to let her or anyone else have it before he died."     Af-
terwards when he fell asleep, said Mary took some papers

from his said coat pocket, and complainants assert their belief that the paper containing the combination was among them. On the afternoon of the same day, the said Mary and her brother George Chambers, "went into the room where the safe was, and locked all the doors by which an entrance could be obtained into said room, and, having the combination then in their possession, tried for a long time to unlock the same;" but failing to do so, they requested Dr. Patterson, who was about leaving the premises, to come into the room and then asked him to "see if he could unlock the combination to said safe," assuring him that they had permission to open it. Patterson then unlocked the safe, and the said George and Mary, in his presence, took therefrom said money, books, papers and mortgage, and put the same in a bag, of which said Mary retained possession. Four or five days after this, and three or four days after the death of Isaac H. Chambers, "the said George and Mary Chambers divided said papers and money as follows : giving the said George Chambers a thousand dollars in money, said mortgage and an account book; to the said Mary Chambers fourteen hundred and eighty dollars in money, and to the said Malinda Chambers twelve hundred dollars in money; and the said Mary Chambers kept possession of a paper which the said Isaac H. Chambers had left in the safe directing how his property should be divided after his death." George Chambers is wholly insolvent. Mary Chambers owns nothing except her interest in said estate, which will not amount to more than four or five hundred dollars. · And said Malinda is not worth the amount of twelve hundred dollars ; and complainant expresses a fear that she will soon be totally insolvent. At the time of filing the bill, Mary Chambers had spent two hundred and thirty dollars of the money apportioned to her, George had expended five hundred dollars of his share, and Malinda had expended a small part—about seventy dollars—of the twelve hundred dollars, which were allotted to her in the division between the three ; and complainants aver that "if they are permitted to keep possession of said money, &c., they will waste and squander the entire sum, and it will be wholly lost to the rest of the heirs of the estate." It is further alleged that the respondents "lay pretended claims to the amounts severally held by them, all of which is entirely false and without foundation," and that complainants have not an adequate remedy at law, for the reason that said property is kept concealed by the defendants so that it can not be levied upon by any means afforded by a court of law." The prayer is for the appoint-

ment of a receiver to take charge of said money, account books, mortgage and papers pending the suit, that an order be passed requiring the respondents to immediately deliver said property into the hands of the receiver, &c.; that they be required to set forth an account of what of said property they have disposed of in any way, and a list of the persons to whom they, or either of them have loaned any of said property, and that, upon final hearing, said property be decreed to belong to complainants, as such administrators, as trust funds for the purpose of administration, and that the same be delivered in their hands, &c., &c. Answer on oath was waived.

Respondents demurred to the bill, and assigned the following grounds:

1. "The bill shows a larceny or tresspass in taking the money and other things out of the safe of Isaac H. Chambers in his life time, and if complainants had any rights, they have an adequate and complete remedy at law. 2. The bill nowhere alleges any fraud on the part of the defendants whereby a trust might be created. 3. The bill nowhere alleges any confidence or trust reposed in the defendants by Isaac H. Chambers, deceased, to give the complainants, who have no more rights than their intestate would have had, if he had lived, the remedy here invoked. 4. The bill shows on its face that as to the money alleged to have been taken from the iron safe in the life time of Isaac H. Chambers, deceased, if the complainants have any rights as to the money, they had adequate and complete remedy at law. 5. That on the allegations of the bill, it appears that this court has no jurisdiction of the subject-matter about which complaint is made in this bill."

The court overruled this demurrer, and from the decree in that behalf this appeal is prosecuted.

It is insisted for appellees that the facts averred in the bill involve a charge of fraud against the respondents, against which equity will relieve because of the absence of an adequate legal remedy, and also, that on the case made, the respondents are trustees *de son tort* of the money and choses in action in controversy for the estate of Isaac H. Chambers, deceased. Both these contentions are, in our opinion, unsound.

The facts present no case of fraud, but wholly a case of simple trespass or larceny. There was no undue influence resorted to to get possession of the property, no overreaching, no false representations, or fraudulent concealment practised as means of acquiring the possession and control

[Chambers v. Chambers.]

of the money and papers. All that was done as the facts are now stated amounted only to the surreptitious abstraction of the property from Isaac H. Chamber's safe without his knowledge or consent; and surely this can be no more a fraud in legal contemplation than had the respondents been casual stangers to Chambers, and had unlocked his stable and carried away his horse *animo furandi.*

It is equally clear that the transaction involved no element of an express trust. No trust or confidence was reposed in the respondents by Chambers in respect of this property. George and Mary Chambers secured possession of this property in the life time of the owner, not only without his consent, or knowledge even, but against his expressed wish and purpose. He not only did not intend that they should take the property with the understanding that they should dispose of it in a certain way or hold it for certain purposes, but he did not consent to their possession of it at all. Every material element of an express trust is lacking. Does the transaction involve a *constructive* trust? It is too clear for much discussion that considered as between the respondents and Isaac H. Chambers in his life time, no such trust can be evolved out of the premises. Had the respondents acquired the *title* to this property *by fraud,* they would have been constructive trustees for the benefit of Isaac H. Chambers, while he lived, and for his estate now. But they clearly acquired no *title* to the property by *fraud* or otherwise; they have no title to it now, and have, as we have seen, committed no fraud but rather a trespass or larceny. Clearly too, if the property when they intermeddled with and acquired the possession of it was trust property, they would be held to have taken it subject to the trust and thereby to have made themselves trustees *in invitum.* But at that time the property had no semblance of a trust character. It was simply held and owned by Isaac H. Chambers in his own right and to his own beneficial use. To hold that the respondents by depriving him—not of his title, for that of course remained in him, but,—of his possession and use became trustees for his benefit would be to convert all wrongful possessions into trust estates and all persons who tortiously acquire the possession of the property of another into trustees for the owner, a result which finds no support in principle or authority. An essential element of all trusts is a use in a person other than the trustee or rather, since the statute of uses, a trust is a use not executed into a legal estate. Not only was this element wholly wanting in the case as it stood between George and Mary Chambers, on the

[Chambers v. Chambers.]

one hand, and Isaac H. Chambers, on the other, they, on the facts averred, holding this property not to the use of another but for their own benefit and behoof as joint tort feasors, but for the further essential element of a *title* in them to feed uses, so to speak, is not at all involved. Very clearly they were not trustees to Isaac H. Chambers by construction or otherwise. They simply held the possession of this property at the time of his death as the result of a purely wrongful caption made for their own benefit, and involving no other duties or obligations upon them than would have rested on any other person who had without pretense of right or suggestion of other than ulterior selfish purposes seized or stolen the property in question. Isaac H. Chambers had a clear right to sue them in trover, or in detinue upon identification, but he had no standing in chancery to invoke the execution of a trust; and it will not be contended that his representatives on the facts as now averred, had any other or different rights or remedies than were his while he lived. Had what occurred taken place after his death, had these respondents then intermeddled with the assets of his estate and assumed to dispose of the same by way of administration on his estate, clearly they could be proceeded against as trustees *de son tort*, for such they would have made themselves because of the *then* trust character of the property which would have continued impressed upon it in their hands; but that is not the case made by the bill. Of course the mere fact that complainants' legal remedies would prove abortive because of the insolvency of the respondents can not impart equity to the bill, there must be some ground of equity jurisdiction stated, and that inadequacy of legal remedies which results from the impotency of process out of courts of law can never be a basis for equitable interposition. And we are constrained to hold it to be without equity, and, of consequence that the chancellor erred in overruling the demurrer.

It may be that if George and Mary Chambers took possession of the money and papers in the life time of Isaac H. not for the purpose of conversion to their own use simply, or of making such dispositions of it as they would of their own property, but for the purpose of holding it till after his death as his property, and then dividing and distributing it in accordance with written directions left by him, and if they held it in this way and for this purpose till a time subsequent to his death and then assumed to divide and distribute it as assets of his estate that they and Malinda Chambers would, on these facts, be held to be trustees. We

[Balkum v. Reeves.]

do not decide this, however, and have referred to this possible aspect of the case because there is passing statement in the bill which leads us to infer the property may have been taken and held in this way and for this purpose, but, if so, the facts are not averred.

Reversed and remanded.