(76 South. 95)

EVANS et al. v. EVANS et al. (6 Div. 378.)

(Supreme Court of Alabama. May 10, 1917. Rehearing Denied June 7, 1917.)

1. CONSTITUTIONAL LAW ⊕⇒309(1) — "DUE PROCESS OF LAW."

"Due process of law" means notice, a hearing according to that notice, and a judgment entered in accordance to that notice and hearing.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 929, 930.

For other definitions, see Words and Phrases, First and Second Series, Due Process of Law.]

2. EXECUTORS AND ADMINISTRATORS ⊕⇒ 513(10) — FINAL SETTLEMENT — NATURE OF PROCEEDINGS.

An administrator is a trustee for the benefit of creditors and distributees, and a proceeding by him for final settlement is essentially a proceeding in personam as to the property rights of the cestui que trust or the distributee.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2279, 2284.]

3. TRUSTS ⊕⇒358(1)—FOLLOWING TRUST PROPERTY.

So long as trust property can be followed the property into which it has been converted remains subject to the trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 523, 553.]

4. TRUSTS ⊕⇒352—MIXING TRUST FUNDS.

If one mixes trust funds with his own, the whole will be treated as trust property except so far as he may be able to distinguish what is his.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 520–525.]

5. EXECUTORS AND ADMINISTRATORS ⊕⇒516(2) — ACTION TO OPEN SETTLEMENT — STATUTE.

Under Code 1907, § 3914, providing that, when any error of law or fact has occurred in the settlement of any estate of the decedent to the injury of any party without any fault or neglect on his part, such party may correct such error by bill in chancery within two years after the final settlement thereof, and a failure to appeal from the decree of the probate court shall not be held to be such fault or neglect as will bar the complainant of the remedy provided, the heirs of deceased were entitled to file a bill in chancery to correct errors of law or fact that occurred to their injury in the final decree and declare a trust on the fund where they alleged that they were not parties to the administration of the estate and had no knowledge of any of the proceedings.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2199–2206.]

6. DIVORCE ⊕⇒320—DECREE—OPERATION AND EFFECT—SUBSEQUENT RELATION.

Where the divorce secured by a wife was silent as to husband's right to marry again, a marriage by him with G. prior to the decree would not be validated by the decree nor by a subsequent marriage of his divorced wife and his living with G., and the children of such marriage are not legitimate.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 818, 819, 844.]

7. EXECUTORS AND ADMINISTRATORS ⊕⇒530 — ADMINISTRATOR'S BOND — EFFECT OF FINAL DISTRIBUTION.

Under a bond providing that surety is obligated to perform all duties which are or may be required of the administrator, a final decree of the probate court and a distribution thereunder was a complete acquittance of the surety in view of Code 1907, § 1507.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2404, 2405.]

Appeal from Chancery Court, Jefferson County; A. H. Benners, Chancellor.

Bill by Edward E. Evans and others against Mrs. Grace Evans and others to enforce a trust on a fund distributed by decree of the probate court. From the decree of the chancellor, defendants appeal. Reversed and remanded in part, and in part affirmed.

Frank S. White & Sons and Carmichael & Winn, all of Birmingham, for appellants. Stokely, Scrivner & Dominick and Sinnott & Keene, all of Birmingham, for appellees.

THOMAS, J. The purpose of this bill is to enforce a trust on the fund distributed by decree of the probate court to certain of appellants.

The primary question for determination is whether a bill in chancery may be maintained by a party injured without fault or neglect on his part to correct an error of law or of fact that has occurred in the final settlement of an estate of a decedent, and to declare a trust on the fund distributed by the final decree of the probate court, or on the proceeds thereof, where the same have not yet come into the hands of a bona fide purchaser for value without notice.

---

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

It is established that certain of the proceedings in the probate court are ex parte in nature, at least, until some one having an interest is made a party, or of his own motion becomes a party thereto; and as to such parties the proceeding is inter partes. Among these, for example, is the proceeding to establish a will (Watson v. May, 8 Ala. 177; Walker v. Jones, 23 Ala. 448; Blakey's Heirs v. Blakey's Ex'x, 33 Ala. 611; Clemens' Case, 38 Ala. 721; Leslie v. Sims, 39 Ala. 161; Reese v. Nolan, 99 Ala. 203, 13 South. 677), or the proceeding to have decreed the sale of a decedent's lands for distribution or for division (Lyons v. Hamner, 84 Ala. 197, 4 South. 26, 5 Am. St. Rep. 363; Cantelou v. Whitley, 85 Ala. 247, 4 South. 610; Jones v. Woodstock Iron Co., 95 Ala. 551, 10 South. 635; Neville v. Kenney, 125 Ala. 149, 28 South. 452, 82 Am. St. Rep. 230; Conniff v. McFarlin, 178 Ala. 160, 59 South. 472), or that to pay debts (Howell v. Hughes, 168 Ala. 460, 53 South. 105; Moore v. Cottingham, 113 Ala. 148, 20 South. 994, 59 Am. St. Rep. 100; Friedman v. Shamblin, 117 Ala. 454, 23 South. 821), or that to set aside a homestead (Singo v. Fritz, 165 Ala. 658, 51 South. 867; Hogan v. Scott, 186 Ala. 310, 65 South. 209).

[1] All such cases presuppose the existence of jurisdictional facts and a proper averment thereof (Duncan v. Stewart, 25 Ala. 408, 60 Am. Dec. 527; Bradley's Case, 34 Ala. 707, 73 Am. Dec. 474; Bean's Adm'r v. Chapman, 73 Ala. 145), and that the right to be heard existed (Sweeney's Case, 151 Ala. 242, 44 South. 184; Lyons v. Hamner, supra; Pennoyer v. Neff, 95 U. S. 714, 24 South. 565). For due process of law means notice, a hearing according to that notice, and a judgment entered in accordance to that notice and that hearing. That is to say, the Fourteenth Amendment to the federal Constitution guarantees that the defendant shall be given that character of notice and opportunity to be heard which is essentially due process of law. It has been held that, when this is done, the requirements of the Constitution are met, and that it is not for the Supreme Court of the United States to determine whether there has been an erroneous construction of statute or common law by the state court. Due process requires, however, that the court which assumes to determine the rights of parties shall have jurisdiction, and that notice and opportunity for hearing shall be given the parties. Subject to these fundamental conditions, which are universally prescribed in the systems of law established by civilized countries, all state laws, statutory, or judicially declared, "regulating procedure, evidence, and method of trials," have been sustained by the Supreme Court of the United States as being consistent with "due process of law." Iowa C. R. Co. v. Iowa, 160 U. S. 389, 16 Sup. Ct. 344, 40 L. Ed. 467; Twining v. New Jersey, 211 U. S. 111, 29 Sup. Ct. 14, 53 L. Ed. 97; West v. Louisiana, 194 U. S. 261, 24 Sup. Ct. 650, 48 L. Ed. 965; Standard Oil Co. v. Missouri ex rel. Hadley, 224 U. S. 270, 288, 32 Sup. Ct. 406, 56 L. Ed. 760, Ann. Cas. 1913D, 936; Vicksburg v. Henson, 231 U. S. 259, 34 Sup. Ct. 95, 58 L. Ed. 209; Nalle v. Oyster, 230 U. S. 165, 33 Sup. Ct. 1043, 57 L. Ed. 1439; Williams v. Bankhead, 9 Wall. 563, 22 L. Ed. 184; Williams v. Eggleston, 170 U. S. 304, 18 Sup. Ct. 617, 42 L. Ed. 1047; McCandless v. Pratt, 211 U. S. 437, 29 Sup. Ct. 144, 53 L. Ed. 271.

[2] The question for decision in this case does not fall within the class of proceedings in rem; for the final settlement of any trust is essentially a proceeding in personam as to the conclusion of the property rights of the cestui que trust or the distributee.

[3, 4] That an administrator is a trustee for the benefit of the creditors and distributees of his intestate's estate is declared by abundant authority. Brannan v. Oliver, 2 Stew. 47, 19 Am. Dec. 39; Baker v. Rowan, 2 Stew. & P., 361; Saltmarsh v. Beene, 4 Port. 283, 30 Am. Dec. 525; McLane v. Spence, Adm'r, 6 Ala. 894; Hampton v. Shehan, 7 Ala. 297; McCartney v. Calhoun, 17 Ala. 301; Andrews v. Hobson, 23 Ala. 236; Montgomery v. Givhan, 24 Ala. 568; Calloway v. Gilmer, 36 Ala. 354; Otis, Adm'r, v. Dargan, 53 Ala. 178; Foxworth v. White, 72 Ala. 231; Humphreys v. Burleson, 72 Ala. 6; Daniel v. Stough, 73 Ala. 379; Chambers v. Chambers, 98 Ala. 454, 13 South. 674; Cottingham v. Moore, 128 Ala. 209, 30 South. 784; Thompson v. Thompson, 107 Ala. 163, 18 South. 247; Taylor v. Crook, Adm'r, 136 Ala. 373, 34 South. 905, 96 Am. St. Rep. 26; Sweeney's Case, 151 Ala. 242, 44 South. 184; Peters v. Rhodes, 157 Ala. 25, 47 South. 183; 11 R. C. L. § 6, p. 23, and authorities; Id., § 8, p. 25. And, so long as trust property can be followed, the property into which it has been converted remains subject to the trust. If one mixes trust funds with his own, the whole will be treated as trust property, "except so far as he may be able to distinguish what is his." Brooks v. Greil Bros. Co., 192 Ala. 235, 68 South. 874; Hutchinson v. National Bank, 145 Ala. 196, 41 South. 143; Nixon State Bank v. First State Bank, 180 Ala. 291, 60 South. 868.

For convenient reference the statute as amended, appearing in the Code of 1907 as section 3914, is here quoted:

"When any error of law or fact has occurred in the settlement of any estate of a decedent, to the injury of any party, without any fault or neglect on his part, such party may correct such error by bill in chancery, within two years after the final settlement thereof; and the evidence filed in the court of probate in relation to such settlement must be received as evidence in the court of chancery, with such other evidence as may be adduced; and a failure to appeal from the decree of the probate court shall not be held to be such fault or neglect as will bar the complainant of the remedy herein provided."

By section 3917 the chancery court is given the right to correct irregular sales of land under decree of the probate court, where the parties in interest have had legal notice of the proceeding in which the decree was rendered. This statutory provision was the codification of Act Nov. 3, 1870, p. 390 (Code, 1876, §§ 3840, 3841). It has never been given application in a case where the parties in interest had no legal notice that their property was to be affected by the attempted sale, and unless the lands sold at their full value, and the price was paid in full by the purchaser. Gomez v. Gomez, 155 Ala. 158, 165, 45 South. 637.

This statute, or the salient parts thereof, first found place in the miscellaneous provisions of the Code of 1852, as section 1915. its last clause was added by section 3536 of the Code of 1886. This provision has not been specifically construed, that we can find. The early cases gave to the statute a highly remedial construction. Mock's Heirs v. Steele, 34 Ala. 198, 73 Am. Dec. 455; Meadows v. Edwards, 46 Ala. 354; Monnin v. Beroujon, 51 Ala. 196. We refer to section 3914 of Code 1907.

The rule of these cases was changed by holdings to the effect that, where jurisdiction has attached, the decree of the probate court, within the sphere of that jurisdiction, is as conclusive as that of any other court of general jurisdiction, and that it is aided by the same intendments of law. Otis v. Dargan, supra; Waring v. Lewis, 53 Ala. 615; Gamble v. Jordan, 54 Ala. 432; Stabler v. Cook, 57 Ala. 22; Boswell v. Townsend, 57 Ala. 308; Jones v. Fellows, 58 Ala. 343; Bowden v. Perdue, 59 Ala. 409; Whorton v. Moragne, 62 Ala. 201; Hatchett v. Billingslea, 65 Ala. 16; Burke v. Mutch, 66 Ala. 568; Lowe v. Guice, 69 Ala. 80; Hatcher v. Dillard, 70 Ala. 343; Humphreys v. Burleson, 72 Ala. 1; Lyne's Adm'r v. Wann, 72 Ala. 43; Foxworth v. White, 72 Ala. 224; Stoudenmire v. De Bardelaben, 72 Ala. 300; Cawthorn v. Jones, 73 Ala. 82; Massey v. Modawell, 73 Ala. 421; Waldrom's Case, 76 Ala. 285; Farley v. Dunklin, 76 Ala. 530; Barclift's Case, 77 Ala. 528; Vincent v. Martin, 79 Ala. 540; Watts v. Frazer, 80 Ala. 186; Tutwiler v. Lane, 82 Ala. 456, 3 South. 104; Hall v. Pegram, 85 Ala. 522, 5 South. 209, 6 South. 612; Crumpler's Case, 85 Ala. 149, 4 South. 826; Knabe v. Rice, 106 Ala. 516, 17 South. 666; Adams v. Walsh, 190 Ala. 516, 67 South. 432; White v. Hill, 176 Ala. 480, 58 South. 444; Martinez v. Meyers, 167 Ala. 456, 52 South. 592; Id., 172 Ala. 641, 55 South. 498; Id., 181 Ala. 293, 61 South. 810; Carpenter v. Carpenter, ante, p. 96, 75 South. 472; Adams v. Walsh, ante, p. 140, 75 South. 888.

In Otis v. Dargan, supra, the bill was filed under the statute, and sought to review a settlement in the probate court, and the Chief Justice said:

"The acquittal of fault or neglect, under the Code, is indispensable, whether the error complained of is apparent on the record, or is made to appear by evidence dehors the record. Unless the Code operates to bar any impeachment of a decree rendered in the court of probate after the lapse of two years from its rendition. it does not affect or impair the general jurisdiction of a court of equity to open such decrees because of fraud, accident, or mistake. At least it furnishes a cumulative remedy, revisory in its nature, so far as correcting errors of law, to which a party injured, who can acquit himself of fraud or neglect, is entitled. Meadows v. Edwards, 46 Ala. 354. The error of law or fact which is sought to be corrected must be clearly and distinctly pointed out. * * * If relief is sought, not on allegations of fraud, but solely because of facts available in bar of the decree or judgment in the court rendering it, these facts must be stated with like certainty and precision, and it must be shown that the failure to make them available in bar of the decree or judgment, is unmixed with negligence, on the part of the party complaining."

And on the facts of the Otis Case the Chief Justice pointed out that:

"Having thus the actual knowledge of the settlement, which is so prominently insisted on in some of the authorities to which we have been referred, what excuse can be preferred for their failure to inquire into it, and avail themselves of the facts they now press to avoid it? The executor had resigned, the administration was not complete, for a successor to him had been appointed, and he was seeking a final settlement which was to be a final discharge of his liability. These facts certainly were sufficient, if they had ordinary care for their interest to put them on inquiry."

Thus it was clearly pointed out that the complainants in the Otis Case had knowledge, not only of the fact of the administration, but of the settlement sought to be reviewed and of their interest in the estate or fund distributed by the decree.

On page 190 of the report of the Otis Case of the insufficiency of the averment of the lack of knowledge that saved from fault or neglect the court said:

"It is not a negation of facts, or of notice or knowledge of facts, which would have put a man of ordinary prudence, and ought to have put her on inquiry as to her rights. It is not a denial of knowledge that the appellee was executor, administering the estate of the testator. It is not a denial of knowledge of her relation to the testator, of his residence and death, of the fact that he had an estate, which must by operation of law descend to his heirs, or be distributed to his next of kin, if he died intestate, or devolve under his will if he died testate. It is not a denial of the fact that she bore a relation to him, which made her his next of kin, or, if he died testate, a probable recipient of his bounty. Having knowledge of these facts, she was singularly supine if she never made inquiry, and her supineness is negligence. * * * A court of equity refusing to interpose in such case proceeds upon the highest and most conservative public policy."

The negation of the fact of knowledge by complainants, or of notice of facts calculated to put them on inquiry, as averred in the bill as last amended, was sufficient. No ordinarily prudent or careful person would have been put on inquiry by the facts averred to have come to their knowledge or notice. The averment of the lack of knowledge or of notice, etc., was so complete and specific, indeed, as to warrant the inference that the

draftsman of the amended bill had before him the Otis Case.

In the Bowden-Perdue Case, supra, it is shown that the complainant was represented in the probate court by a guardian ad litem, who actively participated at the settlement and objected to the allowance of the items of credit passed in the settlement challenged in equity, and that this objection was overruled by the court. Chief Justice Brickell wrote to the decision that the demurrer to the bill was properly sustained, and Judge Stone dissented. Among other things, Judge Stone said of the statute, as it affected the bill being tested by demurrer:

"It confers the right to resort to chancery within two years after final settlement, 'when any error of law or fact has occurred in the settlement, to the injury of any party.' Not a word said about reserving an exception, about a new trial, about appeal, or about fraud. The language is, when an error of law or fact occurs. Whose error? Necessarily the court's. And the redress is as ample when the court commits an error of law as when it commits an error of fact."

To meet this suggestion, apparently, the statute was amended (Code of 1886, § 3536), by providing that a failure to appeal from the decree of the probate court should not be held to be such fault or neglect as would bar the complainant of the remedy provided by the statute.

In Boswell v. Townsend, supra (1876), the complainant was present in person and by attorney in the probate court, and produced evidence tending to support his claim, when the decree was rendered against him. He was therefore denied a review of the decree of the chancery court.

In Humphreys v. Burleson, supra (1882), the Chief Justice, writing, referred to the fact that the bill in that case was "directed to the original and general jurisdiction of a court of equity to open settlements had in the court of probate, and relieve a party injured by them, when, by accident, or surprise, or by the act of fraud of his adversary," he was prevented a fair and complete adjudication of his rights upon the settlement, and proceeded to state:

That, "independent of statutory provision," a court of equity has original jurisdiction in such matters, but that, though well established, such jurisdiction is cautiously and sparingly resorted to, and that, "as a condition precedent to its exercise, it must by appropriate pleading be shown, not only that injustice has been done, but that, at the time of the settlement, the party aggrieved could not, in the court of probate, have avoided the injustice, because of accident, or surprise, or by reason of the act or fraud of the adverse party, unmixed with fault or negligence on his part. * * * To the exercise of the statutory jurisdiction for the correction of errors of law or fact intervening in such settlements, it is also essential that the errors should be clearly and certainly pointed out, and by the averment of distinct facts it should be made to appear that such errors are not attributable to the fault or neglect of the party complaining." 72 Ala. 1, 3, 4.

Thus does Chief Justice Brickell make clear the averment of jurisdictional facts necessary to the exercise of the statutory authority for the correction of errors of law and of fact intervening in such settlements. His application of the declared rule to the facts dealt with in the Humphreys Case is as follows:

"The facts disclose a fraud upon the appellant, which vitiates the settlement, to the same extent that it would have been vitiated if it had been wholly ex parte, and without notice. The notice was of no avail, when it was attended with representations, upon which she had the right to rely, that there was no room or reason for controversy, that without it the full measure of her rights would be accorded. It is because of such representations, frauds by which a party obtains unconscionable advantages, that a court of equity is accustomed to annul judgments at law, or the decrees of courts of concurrent jurisdiction, affording a fair opportunity for an adjudication of the rights of parties."

Though the learned Chief Justice employs the expression, "Because of fraud in the matter on which the decree or judgment was rendered, the court may not interfere, but, when the fraud lies in an extrinsic and collateral act, by which the judgment or decree is directly obtained, the court will interfere," his meaning is clear to the effect that, aside from the statute, a court of equity will in such case interfere to relieve against a fraud committed in the "extrinsic and collateral act" by which the decree of the court was "directly obtained."

It is to be observed, however, that the complainant in that case, Humphreys, was not seeking to correct an error of law or fact in a decree in favor of Burleson, or praying relief from the injurious result of a fraud on the part of Burleson in the procuring of the decree, under the amended statute. Nor was that case one where a decree was rendered in a proceeding touching which the innocent parties were without notice, or without notice of facts calculated to put them on inquiry. Both Humphreys and Burleson were cognizant of the fact of administration and of the respective rights of the parties therein. In the instant case the plaintiffs were not only not original parties to the pleading in which the jurisdiction of the court was invoked by the petition for letters of administration, but were not parties litigant therein. They were not represented by guardian or counsel, and were free from fault or neglect in asserting their rights when they became cognizant of the true facts.

After the pungent remarks of Judge Stone's in Bowden's Case on the construction theretofore given the statute, and after the subsequent amendment of the statute by the addition of the words, "A failure to appeal from the decree of the probate court shall not be held to be such fault or neglect as will bar the complainant of the remedy herein provided," was it not intended that the provision of the amended statute should accord to a party to the final settlement in the probate court the right to review in chancery the decree, where an error of law or fact has in-

tervened to the injury of any party without fault or neglect on his part, notwithstanding such error was the result of fraud in an extrinsic and collateral act by which the judgment or decree is directly obtained, or the result of a "fraud, accident, surprise, or mistake in the matter on which the decree or judgment was rendered," whereby a party obtains an unconscionable advantage over the guiltless or innocent party? Especially must this be true when the party injured was not a party to the proceeding in which the injurious error intervened. Humphrey's Case, supra, 72 Ala. 6; Hall v. Pegram, supra; United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93; Gillespie v. Moon, 2 Johns. Ch. (N. Y.) 596, 7 Am. Dec. 559; Marine Ins. Co. v. Hodgson, 7 Cranch, 332, 336, 3 L. Ed. 362.

The Burleson Case was cited with approval in Rittenberry v. Wharton, 176 Ala. 405, 58 South. 298, the Chief Justice saying:

"From the view we take of this case the decree of final settlement is not binding upon the ward, and should be set aside upon the ground of fraud in its procurement, * * * a fraud by which also the court was imposed upon and misled into a false judgment. * * * If the probate court had not secured jurisdiction of the ward's person, then its decree was a nullity, and the bill lies to remove the settlement to the chancery court. Cox v. Johnson, 80 Ala. 22. If said court had such jurisdiction, and yet its decree was unjust and fraudulently procured, without the fault of complainant, it is subject to annulment in a court of equity." 176 Ala. 401, 407, 58 South. 298.

In Stoudenmire v. DeBardelaben, 72 Ala. 300, the matters complained of in the original bill were all cognizable by the probate court and on final settlement necessarily involved in the decree, and the complainant "knew the sums with which the guardian charged himself." He was not permitted to relitigate the matter in equity under the statute.

Mr. Justice Somerville applied the statute (Code 1876, § 3837) to a case where the sureties on an administrator's bond sought to correct errors and absolve themselves from liability under the decree rendered in the probate court against the principal. He said:

"It is plainly indispensable to the exercise of this jurisdiction that it must be made to appear, both by the allegations of the bill and the proof by which it is supported, that the complainants, who invoke the aid of the court, are acquitted of all fault or neglect on their part. If they had knowledge of facts which should have put a person of ordinary prudence on inquiry, and these facts failed to quicken their diligence into an ascertainment of their rights, or a knowledge of the fraud and errors of which complaint is made, it cannot be said that they are sufficiently free from negligence to be brought within the letter or spirit of the statute. * * *

"The evidence shows that one of the complainants was present at the settlement, and the other two were represented by authorized attorneys in fact. No fraud was practiced upon them, and no misrepresentations were made. The items of the account were open to their observation, and were actually examined by them. They were not complicated, but appear to have been few and simple."

Cawthorn v. Jones, supra.

An attorney who had been appointed guardian ad litem for infants, representing them at the rendition of the decree in the probate court, was employed by the complainant in the chancery court. It was held that the bill, as one to review a final decree under the statute, was defective in not showing that complainant was "without any fault or neglect." Vincent v. Martin, 79 Ala. 540; Modawell v. Hudson, 80 Ala. 265.

In the Modawell-Hudson Case Judge Stone said:

"The fact that Alice Hudson was at the time a minor can make no difference. She was represented by a guardian ad litem duly appointed, who, with his counsel, contested every step taken in each of the settlements. The decree is as binding on her as if she had been an adult. * * * The probate court having unquestioned jurisdiction of the settlement of the second administration, and the election of the distributees to carry the default of the first as a debit into the second administration, rendering it necessary to ascertain the extent of that default, it was immaterial how that important fact was arrived at, provided it was correctly done. The decrees of distribution being in all respects regular and for the proper sums, the fact that by irregular processes, if you please, the account was taken, correctly taken, without invoking the powers of the chancery court, can give the present complainants no right to maintain this bill. Their opportunity was to claim or accept distribution, when the true account of the first administration was ascertained in the probate court, or, if necessary, to have sought relief in the chancery court, before electing or allowing that balance to become absorbed and decreed in the second administration."

It will be observed that all of the foregoing decisions were under the statute as found in Code 1876, § 3837, and antedated the significant amendment of Code 1886, in section 3536. In Hall v. Pegram, 85 Ala. 522, 5 South. 209, 6 South. 612, the amendment was adverted to, and was held to be without application, as the bill was filed on the 24th day of November, 1886, and was to review a decree rendered on the 28th day of August of the same year, and the Code of 1886 was not adopted until the 28th day of February, 1887. The bill in Hall's Case was filed by a nonresident executor against a resident administrator of the estate in Alabama. Judge Stone again said (of the statute before amendment):

"This statute is found, without change, in each of the Codes of 1852, 1867, and 1876. A clause is added to it in the Code of 1886, but it does not affect this case. * * *

"Under our decisions * * * my opinion is that we have in effect declared that the statute * * * has accomplished no result whatever. This I attempted to show in Bowden v. Perdue, 59 Ala. 409. The interpretation it has received at our hands gives to it the same scope and extent in correcting errors in judgments, as was done by the chancery court without the statute. * * *

"We have, as our rulings show, given full effect to the statutory requirement, that any injury complained of, to be remediable under this statute, must have been suffered 'without any fault or neglect' on the part of the party complaining. Yet there are cases in which relief has been granted. If the administrator has made misrepresentations, has misled or deceived

his beneficiary, and thus thrown him off his guard, or has resorted to any artifice by which he has intentionally averted scrutiny of his account, and has thus obtained an undue advantage in his settlement, chancery will grant relief, if timely application be made. Chancery relieves against the most solemn judgments, if procured by fraud."

We do not find that the significance of the amendment made in the Code of 1886 has been considered by our court. The Chief Justice pointed out in the opinion in Rittenberry v. Wharton, supra, that the relief there sought was not under the statute.

The case of Knabe v. Rice, supra, was tried and decided since the amendment of the statute; and though the bill was filed by Knabe, as an individual, to enjoin the enforcement of execution on a decree rendered against him as administrator, the fact of his liability as such administrator had been adjudged by the probate court. The court declared:

That it was not "an open question, that the decrees of the court of probate, in the exercise of its jurisdiction, are of equal dignity with the judgments of courts of law, and as conclusive, not only of the facts actually litigated and decided, but of all facts necessarily involved in their rendition, and a court of equity will not reopen them in the absence of special equities which would justify reopening the judgments of courts of law," and that there was alleged "no fraud, accident, no act of Rice," which prevented Knabe from "interposing the payment he had made as a defense in the court of probate."

Thus it will be observed that the proceeding attempted in Knabe's Case was not strictly one for the correction of an error of law or of fact under the statute, but was, rather, one in the nature of a review of matters that had been litigated in the probate court by the several parties in interest, and there decided adversely to him. The statute was thus not permitted (nor was it ever intended) to authorize an appeal from the probate court to the chancery court to retry de novo the facts adjudicated by the decree of the probate court.

The Martinez Case, 167 Ala. 456, 458, 52 South. 592, declared, on the authority of Waldrom v. Waldrom, 76 Ala. 285 (a case under the old statute), that the purpose of this statute was not merely to authorize the chancery court "to revise the decree of the probate court by correcting errors committed when all parties were cognizant of the facts" on which the decree is predicated. It is clear that Chief Justice Anderson, in thus stating the purpose of the statute, was in effect declaring its applicability for correcting errors committed in decrees of the probate court, where induced by the respondent, when the complainant was ignorant of the facts on which the decree was predicated, and knew no fact to put him on inquiry, and was himself "without fault or neglect" as that expression has been defined by our courts.

The case most nearly approaching, in facts, the instant case, is that of White v. Hill, 176 Ala. 480, 58 South. 444. There Mr. Justice McClellan pointed out who are parties bound by a decree or judgment (Powell v. Robinson, 76 Ala. 433), that:

"The grant of letters testamentary and of administration are in more important aspects proceedings in rem, and in others are proceedings in personam. Nelson v. Boynton, 54 Ala. 368, 376. In the particular that the grant of letters creates a repository of the abeyed title of the deceased owner of personal property, it operates upon the status, the thing, and is, hence, a proceeding in rem. * * * But in the aspect that the grant of letters of administration determines the right thereto, including priority, or inclusion within one of the classes defined in Code, § 2520, the proceeding is in personam."

That:

"It has come to be accepted law that, where the right to letters of administration of an estate depends upon relationship to the intestate (Code, § 2520), and that question is investigated and determined by a court generally jurisdictioned in the premises, and the letters are granted accordingly, that adjudication is conclusive, as to relationship to the decedent and as to the right to distribution, upon parties to that proceeding, and the judgment therein cannot be collaterally assailed in another forum."

Under the definition of parties concluded by a judgment or decree, given in Powell's Case, supra, "He must have been a party to the suit, or in privity with a party, or have possessed the power of making himself virtually a party in the larger legal sense, having a right to control the proceeding, to make defense, to adduce and cross-examine witnesses, and to appeal from the decision, if any appeal lies" (quoted with approval in White's Case, supra, and see Tarleton v. Johnson, 25 Ala. 300, 60 Am. Dec. 515; McLelland v. Ridgeway, 12 Ala. 482), complainants here were not parties or privies to the decree in the probate court, and had no right to control the proceeding therein. Under these authorities, and the averments of the bill, it is clear that complainants were not represented in said probate court, when the decree was entered, by a guardian, or an attorney, or a next friend, or a guardian ad litem appointed by the court to represent them as the heirs of said decedent, or by a guardian ad litem to represent them as the unknown heirs at law of the said decedent. They were not bound by the ascertainment made therein of the relationship of certain of the respondents to decedent, and of their right to distribution in his estate, in the absence of notice, or of facts calculated to put them on inquiry as to their interest being dealt with.

In Hogan v. Scott, 186 Ala. 310, 65 South. 209, the statute had no application. That was a bill in the nature of a review to vacate a homestead proceeding. The effect of the holding was that where, under the statute for setting aside a homestead to the widow, or for having assigned to her the statutory allowance in lieu of the homestead, a widow files a petition to have set apart to her a homestead in certain of the decedent's lands, wherein she alleges under oath that she is the only heir at law of the decedent, the decree thereon does not bind a minor

child of the decedent, who was not named in the petition, nor made a party to the proceeding. It was further declared that the decree does not affect the property rights of such a minor, whether the property was or was not the homestead of the decedent, that the office of the petition is merely to withdraw from administration the lands dealt with, and that, as the statute vested the title in the widow and minor child, such minor had a complete and adequate remedy at law to protect his interest against the claim of exclusive ownership so made by the widow. Thus, by analogy, the conclusion reached in the Hogan Case supports the contention of complainants in the instant case.

In Adams v. Walsh, 190 Ala. 516, 520, 67 South. 432, 434, it is pointed out that a bill for review under the statute must negative fault or neglect on the complainant's part in making defense, or in asserting the right in the probate court where the decree was entered. Mr. Justice Gardner said:

"No fraud, accident, surprise, or mistake in obtaining the decree, or as to any item of credit complained of, is alleged in the bill. For aught that appears from the bill, the complainant was present at the hearing, and these matters now complained of were fully presented to the court and determined, and known and understood by all the parties at that time. As said by this court, speaking of the statute (section 3914, Code of 1907) here sought to be invoked, in Martinez v. Meyers, 167 Ala. 456, 52 South. 592: 'It was not the purpose of this statute, however, to merely authorize the chancery court to revise the decree of the probate court by correcting errors committed when all parties were cognizant of the facts upon which they may have been predicated'—citing Waldrom v. Waldrom," supra.

[5] We have no doubt that the statute authorized the filing by these complainants of a bill in chancery to correct errors of law or fact that occurred to their injury, and without fault or neglect on their part. These complainants Edward Eugene Evans and Lyddie May Evans seek to acquit themselves of all fault or neglect in asserting their rights while the estate of their deceased father was being administered in the probate court, or in not more promptly asserting their rights to the fund now being held and administered under the guardianship of said court, by alleging that they were not made parties to said proceeding in the probate court of Jefferson county, and were not cognizant of any fact which would put them on notice of such administration in said court. They aver:

That they "were not parties to the proceeding in the probate court for the administration of the estate of said E. E. Evans, and were not named in any of the proceedings therein as being heirs, legatees, and distributees of said estate, and that they had no knowledge that said E. E. Evans was dead, or that said Grace Evans had been appointed administratrix, or that any proceeding was pending in the probate court of Jefferson county or other court for the administration of said estate, and had no knowledge or notice of any order or decree or of any of the proceedings in said court," and "that the several respondents are therefore trustees for complainants of so much of the funds of said estate as came into their respective possessions as alleged in their amendment to the bill filed" in said cause.

Thus the bill undertakes to reach that part of the trust fund that is in either its original or substituted form, where no rights of innocent parties have intervened, and to that end has properly made parties defendant certain mortgagors, the trust company having a portion of said funds, the surety on the guardian's bond, the guardian to whom the mortgages are payable, and the several distributees under the decree of final settlement of the probate court.

[6] The chancery court having jurisdiction to impress the fund with the trust, and having acquired jurisdiction of that fund and of the original parties dealing therewith in the probate court to the injury of the true owners, if respondent distributees are not such true owners, it becomes necessary to determine if complainants are such true owners of the fund, or parties at interest injured by said final settlement in the probate court, as are authorized under the statute to file the bill. This inquiry depends upon the lawful marriage of the father of the respective children at the time of his death. His attempted second marriage with said Grace was about four years prior to the granting of the divorce to complainants' mother, Nancy, who still lives. In this decree divorcing Nancy from her then husband, so far as the record shows, complainants' father was not permitted to marry again; that is to say, the decree was silent as to him. The record shows no subsequent permission to him, by a court of competent jurisdiction, to marry again. Under this statement of the facts, was the said Grace, respondents' mother, lawfully married to the said Evans on June 21, 1904, or, if not so lawfully married on this date, did the subsequent divorce obtained by the said Nancy on or about March 29, 1909, and her remarriage to West have the effect of validating the living together thereafter of the said Grace and the said Evans as husband and wife? That is to say, after the divorce and remarriage of the wife, Nancy, did the living together of the said Grace and the said Evans as husband and wife, and their holding themselves out to the public as such, have the effect of constituting a common-law marriage and of legitimating said respondents, the second set of children, the minor children, of the said Evans by the said Grace?

A kindred question was propounded and decided in the Probate Division of the English Court, 15 Law Rep. 152. The president said:

"Mrs. Tayloe was subject to the Indian law of divorce; she could not contract a valid second marriage by showing that the incapacity arising from her previous marriage had been effectually removed by the proceedings taken under that law. This could not be done, as the Indian law, like our own, does not complete-

ly dissolve the tie of marriage until a lapse of a specified time of the decree; this is an integral part of the proceedings by which alone both of the parties can be released from their incapacity to contract a fresh marriage."

The effect of the holding was that a marriage having been celebrated within six months from the date of the final decree of divorce (the party being permitted to marry only after a period of six months from the date of the decree dissolving the marriage) was invalid. This principle was given application in the Court of Appeals of this state in a bigamy case by Judge Pelham. Witt v. State, 5 Ala. App. 137, 140, 59 South. 715. See, also, Reed v. Hudson, 13 Ala. 570; McCreery v. Davis, 44 S. C. 195, 22 S. E. 178, 28 L. R. A. 655, 51 Am. St. Rep. 794; McLennan v. McLennan, 31 Or. 480, 50 Pac. 802, 38 L. R. A. 863, 65 Am. St. Rep. 835; Smith v. Fife, 4 Wash. 702, 30 Pac. 1059, 17 L. R. A. 573; 9 R. C. L. § 243, p. 439; Id. § 325, p. 503; Id. § 326, p. 504. This application of the rule is not in conflict with Mickle v. State, 21 South. 66, where it was declared that a suspension of the decree until the costs were paid is a nullity, and that such a decree operates as a dissolution of the marriage from its rendition.

In Barefield v. Barefield, 139 Ala. 290, 35 South. 884, the suit was to recover damages for an alleged wrongful conversion of personal property, a part of the estate of one W. M. Barefield, deceased. The plaintiff was a former wife of one Sellers. He had obtained a divorce from her upon a named statutory ground, and it was decreed that "Henry Sellers could marry again." After the rendition of said decree Sellers again married, and he was living at the time of the institution of the trover suit. Thereafter this plaintiff (the wife from whom Sellers had been divorced) attempted a marriage with W. M. Barefield, who was then a widower with several children, one of whom was the defendant in the trover suit. After plaintiff's purported marriage to Barefield, and continuously until the time of his death, she lived with him as his wife. Upon such statement of fact the court gave the affirmative charge in favor of the defendant (child by the first wife) and refused the affirmative charge for the plaintiff. On appeal the cause was affirmed. When Henry Sellers was granted a divorce from his wife, she was precluded from remarrying, not by reason of any provision in the decree to that effect, but by the fact that the decree was silent as to her, only permitting Henry Sellers to remarry. Code 1907, § 3796.

It is obvious that the facts of the Barefield Case render that decision conclusive of the legal status of the respective parties at interest in the present suit. Chief Justice McClellan declared that the subsequent marriage of Mrs. Sellers was void; that she did not become the wife of Barefield, and was not his wife at the time of his death. There-

fore she was not entitled to dower or to homestead and personal exemptions as his widow, and had no title to the property of Barefield's estate, for the alleged conversion of which the action was brought.

In Ex parte Edwards, 183 Ala. 659, 62 South. 775, it was declared that, as for the decree allowing parties to marry again, such matter rests "entirely in the chancellor's discretion." This discretion not having been exercised in favor of the said Evans, as the husband of complainants' mother, Nancy, when she was divorced, and the said Evans not having been thereafter permitted by a court of competent jurisdiction to again contract marriage, he was not permitted to do so under the law. It was without dispute that, though the said Nancy contracted marriage with West, as permitted by the terms of her decree of divorce, she was living at and after the time of said Evans' death. It must follow, therefore that, as the law is declared, respondents' mother, Grace, was not lawfully married to said Evans on June 21, 1904, and that the subsequent divorce of the said Nancy, on or about March 29, 1909, and marriage thereafter to West, did not affect the legal status of said minors, either complainants or respondents. Under the authority of the Barefield Case the respondent minors' demurrers were properly overruled as to complainants' bill as last amended.

The application of the law to the attempted marriage of Evans to the said Grace and to the status of the children of that attempted marriage may be grievous in result; not so much because they have to forego the benefit to accrue from property that did not descend to them under the statute of descent and distribution, but because of the supposed rights of husband and wife and parents and children that are disturbed. In truth, can this wife and children exclaim: "We did not look for troubles; it is they have come to look for us." Ita lex scripta est. Respondents' said plight illustrates the truth that troubles often arise from occasions offered by ourselves, but that the most cautious and blameless conduct cannot secure us against them, and that when troubles come, whether by our own fault or not, confidence in the divine law alleviates them and often makes them conducive to a better life. Bell v. Bell, 183 Ala. 645, 62 South. 833; Barefield v. Barefield, supra.

[7] The liability of the Fidelity & Deposit Company of Maryland as surety on the administratrix's bond is fixed by the terms of its contract obligation under the statute. Code 1907, §§ 1507, 2540; Gen. Acts 1897, p. 830.

The final decree of the probate court on the administration, and a distribution thereunder by the administratrix, must be a complete acquittance of the surety company on the administratrix's bond. Presley v. Weakley, Adm'r, 135 Ala. 517, 33 South. 434, 93

Am. St. Rep. 39; Gayle v. Johnson, 80 Ala. 393; Martin v. Tally, 72 Ala. 23; Wright v. Lang, 66 Ala. 389; Fretwell v. McLemore, 52 Ala. 124; Rives v. Flinn, 47 Ala. 481; Stakely v. Ex. Com. F. M., Presby. Church, 145 Ala. 379, 39 South. 653.

If the law were otherwise as to the obligations of the surety, it would be practically impossible to obtain protection against the claims of unknown distributees. By the terms of the bond taken to and approved by the judge of probate the surety is obligated to perform all the duties which are or may be required of the executor or administrator; that is, on final settlement and decree of distribution, to pay the moneys of the estate or trust, in accordance with such final decree of the probate or chancery court, a court of general jurisdiction as to such matter, should the principal, the executor, administrator, or trustee, etc., fail to do so.

The demurrer of Fidelity & Deposit Company of Maryland as surety on the administratrix's bond (not on the guardian's bond) in the matter of said estate should have been sustained, and for failure in this respect and to this extent the decree of the chancellor is reversed, and the cause is remanded. In all other respects the decree was correct, and it is affirmed.

Reversed and remanded in part, and in part affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.